IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2000 Session

# BILLIE MAE MANIS v. DONALD RALPH MANIS

**Appeal from the Circuit Court for Sevier County**
**No. 96-405-II    Hon. Richard R. Vance, Judge**

**FILED JANUARY 25, 2001**

**No. E1999-01927-COA-R3-CV**

---

Wife sought a divorce after 41 years of marriage on grounds of inappropriate marital conduct. With Husband acting pro se, the parties filed a Marital Dissolution Agreement. After retaining counsel, Husband withdrew the agreement and filed a counterclaim for divorce, also alleging inappropriate marital conduct. The Trial Court appointed a Special Master, who conducted two hearings and filed a lengthy and comprehensive Special Master's Report. Both parties filed Objections to the Report, and the Special Master held a third hearing addressing the issues raised in the parties' objections. Husband filed Objections to the Special Master's Amended Report. Wife had no objections to the Amended Report. The Trial Court held a fourth hearing, at which arguments of counsel and Husband's offer of additional proof were made. The Trial Court's Final Judgment adopted the Report of the Special Master, as amended, and affirmed the findings of fact and conclusions of law of the Special Master with minor exceptions. Husband raises ten issues, primarily involving the Special Master's valuation and distribution of marital assets and the amount of alimony he was ordered to pay. Wife contests the amounts awarded to her for periodic alimony and for her interest in the marital estate, and also claims that the Trial Court erred in not placing more restrictions on Husband's future business transactions so as to more fully protect her interest in her marital share. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

F. D. Gibson, Maryville, Tennessee, for Appellant Donald Ralph Manis.

Scarlett Beaty, Knoxville, for Appellee Billie May Manis.

# OPINION

## Background

Ms. Billie Mae Manis (Appellee, hereinafter "Wife") and Mr. Donald Ralph Manis (Appellant, hereinafter "Husband") had been married for 41 years when Wife filed for divorce on the grounds of inappropriate marital conduct. Husband and Wife both are 68 years old. Wife has worked outside the home for less than two years during her married life, at stores such as K-Mart, and in Mr. Manis' businesses. Husband has owned and managed various businesses in Sevier and surrounding counties, including pawn shops and horseback riding enterprises, throughout the marriage. He testified that he retired from salaried work in those businesses during the course of this litigation. The record shows, however, that he still controls these businesses and receives income from them.

When Wife filed her Complaint for divorce, Husband was not represented by counsel. Four days after the Complaint was filed, the parties filed a Marital Dissolution Agreement ("MDA") with Husband still unrepresented. The MDA provided that Wife would be granted a divorce based on Husband's inappropriate marital conduct. The property settlement portion of the MDA provided that Wife would receive the marital home in Powell, Tennessee, and would assume the mortgage thereon, as well as another house in Powell, and a one-half interest in a residence in Sevier County, which each of the parties would have the use of for six months each year. Four other parcels of real estate were to be held jointly by the parties, and if any of these were sold, the proceeds were to be divided equally. Husband was to pay $8,000 monthly in alimony "until [Wife] dies or remarries and for as long as the Husband makes a gross income of $200,000 per year."

One year later the Trial Court permitted Wife's counsel to withdraw because Wife refused to prosecute and apparently had abandoned the case. The Trial Court ordered Wife to obtain new counsel within thirty days. Five days later Wife, represented by new counsel, filed a second Complaint for divorce in Knox County, which was later dismissed. Husband retained counsel and filed a Counterclaim for divorce in which he charged that Wife was guilty of inappropriate marital conduct. Husband asked the Court to enforce the MDA or, in the alternative, upon a hearing, to make a fair and equitable division of the Parties' real and personal property. Husband, however, soon moved to withdraw the MDA. Wife did not oppose the withdrawal of the MDA. The Trial Court granted Husband's motion to withdraw the MDA and appointed a Special Master to review the personal and business financial situations of the parties, conduct an accounting, and submit findings to the Court. The Trial Court also ordered Husband to pay Wife $5,500 per month as alimony *pendente lite.*

Both parties were deposed. The Special Master conducted hearings on May 21st and June 26th, 1998. Both parties and six other witnesses were heard and fifteen exhibits concerning the parties' financial situation were introduced. The witnesses included real estate appraisers, pawn brokers, and James Shaver, CPA, who provides financial reporting services including tax returns for Husband's businesses. The exhibits included property appraisals, bank account records and monthly

income and expense statements. By agreement of the parties, the Special Master also met informally with Husband's CPA.

On November 30, 1998, the Special Master filed a detailed and comprehensive 20-page Special Master's Report. That Report states that the witnesses' testimony at the hearings "was at many times conflicting, contradictory and irreconcilable, requiring the Special Master to make difficult decisions regarding credibility." He itemized the parties' assets and meticulously described the valuation methods used to prepare his Report. Applying the described valuation methods, the Special Master determined, among other things, that Husband's business Horsing Around, Inc., had a value of $85,000. He also determined that Fortunes Untold, Inc., which operates four (now five) pawn shops, had a value of $579,289, which he reduced by 30 percent to account for the 30 percent of stock owned by the parties' daughter, Donna Manis. He then discounted Donna Manis' interest by 25 percent because Husband retains the controlling interest, thus leaving a marital estate value for Fortunes Untold of $448,949.28. The parties, through counsel, earlier had agreed that the Trial Court should accept certain amounts as the marital estate values of their remaining real properties, and the Special Master accepted the agreed values. This resulted in a total marital estate of $847,949.

The Special Master then determined that the marital estate should be divided equally, with Wife receiving a total award of $423,974.64. To accomplish the division of marital assets, he awarded Wife the marital home on Della Drive in Powell, Tennessee, with equity of $120,000, and onerated Husband with the mortgage. Wife was also awarded property on North Ridge Road, valued at $100,000. To secure her remaining $203,974.64 share of the marital estate, the Special Master granted her liens against Husband's business properties and required Husband to deposit his shares of stock in Horsing Around, Inc. and Fortunes Untold, Inc. with the Clerk of the Circuit Court as security. Husband also was enjoined from issuing additional stock or otherwise divesting his 100 percent stock ownership in Horsing Around, Inc. or his 70 percent interest in Fortunes Untold, Inc. without judicial approval. All sales of real estate owned by Husband were to be conditioned upon and subject to Court approval, including price and the amount of the proceeds to be applied to satisfaction of Wife's equitable distribution award. The Special Master made other findings and dispositions as to specific assets and liabilities.

Finally, the Special Master found that Wife is in need of alimony and Husband has the ability to pay. He opined that, although public policy and the legislative intent in Tennessee favors alimony in solido or rehabilitative alimony, Wife's lack of earning ability, Husband's high earning ability, Husband's fault, the 45 year marriage, and Wife's need preponderate in favor of periodic alimony in this case, payable until death or remarriage of Wife or death of Husband. The Special Master found that Husband had been required to pay $1,000 per month in excessive alimony from his first payment under the Court's *pendente lite* award, and awarded Husband a credit for this excess against any accrued alimony arrearage or against future alimony payments. He ordered Husband to pay $2,327.67 in base alimony per month, plus $744.77 to extinguish the mortgage on the marital residence and to pay, as alimony, the cost of two life insurance policies upon his life. Husband also was ordered to make a payment on March 1 of every year to offset Wife's tax liability

for the alimony, to maintain health insurance for Wife, and to pay Wife's unreimbursed medical and medication expenses. Wife was awarded reasonable attorney fees, and fees of the Special Master were taxed 2/3 to Husband and 1/3 to Wife. The Special Master ordered that "any further issues for which the parties desire an explicit finding of fact or ruling may be raised within 15 days of this opinion."

Both parties filed numerous Objections to the Special Master's Report. Husband objected to the amount of alimony awarded. Husband argued that the Special Master was appointed in January 1998 but did not file his report until November 30, 1998, and in that interim, Husband had retired, so that he no longer had an income sufficient to pay the amount of alimony ordered. Further, Husband argued that he had voluntarily given Wife $8,000 each month from July 1995 through October 1, 1998 for her support, for a total of more than $300,000, and that the Special Master should have considered these payments as part of Wife's share of the marital estate or as excess alimony. He sought credit against future alimony for those voluntary payments. Husband further alleged that the Special Master had erred on virtually all of the findings of fact and conclusions of law as to the valuation of marital property. Finally, Husband stated that he was in the process of retaining new counsel, and he "specifically reserves the right to amend this pleading after his new counsel has had an opportunity to review the pleadings and transcripts of this cause."

Wife raised a dozen Objections and Requests for Clarification to the Special Master's Report. She complained about the Special Master's acknowledgment that Donna Manis, the parties' daughter, is one-third owner of Fortunes Untold, Inc. She sought an interest in the proceeds from Husband's recent sale of exotic animals, inquired about the value of a lot in Chalet Village, requested that Husband be onerated with the expense of the property taxes on the marital home, and complained about the Special Master's deduction from the value of real property for Husband's potential obligations on a civil suit and a bond. Wife objected to the Special Master's finding that her *pendente lite* alimony was excessive and to the amount of permanent alimony awarded. Wife asked that the remaining portion of her marital distribution be paid in increments of $50,000 on July 31, 1999 and $50,000 each six months thereafter, to be paid in full by December 31, 2001, plus the statutory judgment rate of ten percent until paid in full. Finally, Wife asked the Special Master to take into account Husband's lack of credibility and determine that the estate valuation "be considered an absolute minimum," and that Wife's share be increased because Wife "believes that the Defendant has much more property, assets and cash than he acknowledged before the court."

Husband retained new counsel and filed various motions, including a motion seeking to reduce the alimony *pendente lite* and raising further Objections to the Special Master's Report. The Special Master held a third hearing to deal with seven issues, including Husband's retirement from active employment in his business enterprises, his sale of some exotic animals which had been business properties, two business liabilities which had arisen, and Husband's transfer to the parties' daughter of additional stock of Fortunes Untold. The Special Master examined those transactions and filed an Amended Special Master's Report which adjusted the division of the marital estate in accordance with some of them. He found that Husband's retirement should not cause a reduction in Wife's alimony for various reasons.

-4-

The matter was heard before the Trial Court on April 26, 1999, on the pleadings, the record as a whole, including the Special Master's Reports, and arguments of counsel. Husband sought to introduce further testimony at the hearing, but the Trial Court held that the evidence should have been presented to the Special Master. The Trial Court rendered a Memorandum Opinion adopting the Report of the Special Master, as amended, and affirming the findings of fact and conclusions of law of the Special Master with some exceptions. The Trial Court found that much of the proof had been contradictory, convoluted, vague, uncertain, and incapable of reconciliation. Neither party had produced accurate records of income and expenses, and the credibility of the parties had been an issue from the beginning. The Trial Court opined that " . . . given the complexity, given the issues and the very thorough investigation by the Special Master, the Court will adopt the report of the Special Master, as amended, and affirms the findings of fact and conclusions of law of the Special Master with some exceptions . . . ."

The Trial Court granted Wife a divorce on grounds of inappropriate marital conduct. Based on specific findings of fact as to Wife's age, education, health and other factors, the Trial Court awarded her the amount of periodic alimony set by the Special Master. The Court modified the Special Master's findings so that Husband will receive a credit for any income tax liability he is ordered to pay on Wife's alimony and for any amount of Social Security benefits Wife may receive in any year. The Court further modified the award of alimony by reversing the Special Master's finding that the amount of *pendente lite* alimony Wife received was excessive. Finally, the Court reversed the Special Master's award of Wife's attorney's fees and ordered that each party pay his or her own attorney's fees, and that the fees of the Special Master be divided equally between the parties.

The Final Judgment values the marital estate at $884,997.94. The one-half of the estate awarded to Wife is comprised of the aforementioned real property plus a judgment and lien against the assets awarded to Husband for the remainder of her equitable division in the amount of $221,249.49. After entry of the Judgment, Wife filed a Motion to Alter or Amend, asking the Trial Court to order Husband to make lump sum payments of at least $50,000 every six months until the judgment is satisfied and to encumber Husband's businesses, as well as Husband's personal interests in those businesses, until the Judgment is satisfied. Husband responded that the Court was without authority to encumber the corporations, that the Judgment provided adequate protection of Wife's interests, and that he was financially unable to make the demanded $50,000 payments. The Trial Court denied Wife's Motion.[1]

Husband appeals, raising ten issues concerning the Special Master's valuation and distribution of the marital estate, the amount of temporary and permanent alimony and the Trial Court's refusal to hear testimony on his objections to the Special Master's Amended Report. Wife complains of the valuation and distribution of the marital estate, the amount of permanent alimony awarded, the Court's refusal to order a lien on any dividends distributed to Husband from his

---

[1]The record indicates that at this point, counsel for both parties attempted to withdraw from representation of their clients.

corporations, the Court's refusal to require Husband to obtain Court approval before selling any corporate property, and the Court's refusal to award Wife her attorney fees.

**Discussion**

The Trial Court's order referring certain matters to the Special Master, the Special Master's Report, and the Trial Court's Order adopting the findings and conclusions of the Special Master affect our standard of review on appeal. A concurrent finding of a Special Master and a Trial Court is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. *Long v. Long,* 957 S.W.2d 825, 828 (Tenn. Ct. App. 1997); *Aussenberg v. Kramer,* 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996); *Archer v. Archer,* 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995).

Husband raises ten issues in this appeal, which can fairly be summarized as:

1. Whether the Trial Court erred in the valuation and distribution of the marital estate?

2. Whether the Trial Court erred in the amount of alimony *pendente lite* or the amount of periodic alimony awarded or in requiring Husband to pay Wife an additional sum for her federal income tax obligation arising from alimony?

3. Whether the Trial Court erred in refusing to hear additional testimony after the Special Master had conducted three hearings in this matter?

Husband's specific complaints about the Trial Court's valuation of the marital estate include: (1) the Special Master erred in accepting, with the concurrence of Husband's first attorney, Wife's valuations on certain marital property; (2) the Special Master erred in determining that the proceeds from the sale of exotic animals were marital property; (3) the Trial Court erred in refusing to grant him "credit either in the property division or as an off-set of future alimony" for an estimated $90,000 in voluntary support payments made to Wife after she filed for divorce but before alimony *pendente lite* was ordered; and (4) the Special Master erred in refusing to reduce the value of the marital estate by the amount of a note ("the Cameron Brubaker note") alleged to be outstanding. As stated, we must affirm the Trial Court's Order adopting the findings of fact of the Special Master if those findings are supported by any material evidence. *Long,* 957 S.W.2d at 828.

The Special Master and the Trial Court accepted Wife's valuations of several pieces of real property after Husband's counsel agreed that those values should be accepted:

The Court: Okay. Somewhere you all have stipulated to the market value.

Ms. Beaty: Yes and I have written those down. I went through her deposition to see what those were, and Della Drive was $120,000, North Ridge Road was $100,000, the 14 acres on North Ridge Road at $40,000, 1816 Chapman Highway at $150,000, 6140 Clinton Highway at $250,000, 4208 Airport Road at $150,000, 7216 Old Clinton Highway at $40,000.

Ms. Meador: Your Honor, just for clarification, we accept Ms. Manis' valuations on the property, which is not to say exactly that we are stipulating that those are the amounts. We agree to accept those as the values for your purposes in determining the assets.

After Ms. Meador withdrew as Husband's attorney, his new attorney decided that Ms. Meador's agreement to "accept those as the values for [the Court's] purposes in determining the assets" should be withdrawn. Husband's CPA testified that the total value of the listed properties was between $825,000 and $905,000. (Transcript, Vol.VI, Exhibit 2). Wife testified that the total value of the same properties was $850,000. (Transcript, Vol. VI, p. 295). Wife's estimates, therefore, are within the range of Husband's estimates. Wife's estimates are somewhat lower than Husband's on several pieces of property and somewhat higher than his on others. We find there is material evidence in the record to support the Trial Court's adoption of the Special Master's determination that the values as agreed by the parties should be used in determining the marital assets.

Husband complains about the determination of the Special Master that proceeds from the sale of certain exotic animals were marital property. The record shows that on December 3, 1997, during the pendency of this litigation, Husband sold $71,366.84 worth of exotic animals and horses, and that the sale of exotic animals accounted for $45,000 of the proceeds. At the time of the sale, an injunction against the sale of marital assets was in force. Husband paid himself $36,548.65 of the proceeds from the sale. It was his customary business practice to sell horses before winter to avoid wintering costs. He testified that he sold the exotic animals because the petting zoo was losing money. Husband deposited only $35,318.93 of the proceeds back into Fortunes Untold, and kept $36,548.65 for his personal use. The Special Master found that Wife was entitled to one-half of this amount as her marital share. We find there is material evidence in the record to support the Special Master's finding as adopted by the Trial Court.

Husband argues that the Special Master erred in refusing to grant him credit in the property division or as an off-set of future alimony for voluntary support payments made to Wife after she filed for divorce but before alimony *pendente lite* was ordered. Wife testified that she used the funds for her support and that none of the funds remained in her possession at the time of trial.

There was no contrary testimony. Marital property is to be valued "as of a date as near as reasonably possible to the final divorce hearing date." Tenn Code Ann. § 36-4-121(b)(1)(A). Husband argues that the payments were not a gift or voluntary because they were "memorialized and paid pursuant to a contract prepared by the attorney for Appellee." Not surprisingly, Husband does not suggest that the funds he used for his own support during that same time period be returned to the marital estate for distribution. Moreover, when asked why he had given Wife the monthly support payments before the Court ordered him to do so, Husband testified, "Because at one time I loved the damn woman, okay? That's why." He went on to state that when the Court ordered him to make the payments, they became "blood money . . . it used to be voluntary money. I wanted her to have the money . . . ." We find there is material evidence in the record to support the Special Master's finding that the payments Husband made to Wife before the Court ordered alimony *pendente lite* were voluntary and not part of a division of marital property.

Husband argues that the Special Master erred in refusing to reduce the amount of the marital estate by $100,000 to account for an alleged outstanding note which he owes to a Mr. Jim Cameron or a Mr. Jim Brubaker. The Special Master found:

> The witnesses' testimony was at many times conflicting, contradictory and irreconcilable, requiring the Special Master to make difficult decisions regarding credibility.
>
> *   *   *
>
> [Husband] testified that he borrowed $100,000 from Jim Cameron and Jim Brubaker, as evidenced by Exhibit 6 to the hearing. The amount of money actually borrowed is unknown, but was definitely less than $100,000 since the $100,000 to be repaid included interest. The note was secured by a deed of trust dated September 21, 1996 and notarized by Donna Manis. This deed of trust was later released by Jim Cameron who testified that he was no longer owed any money by Don Manis. Don Manis testified that Jim Cameron only sold his interest in the note to Mr. Brubaker, as opposed to simply releasing the lien as indicated by the deed of release. Mr. Brubaker was not called to testify on either hearing date, and the issue of the genuineness of this debt became apparent to all counsel and parties during the first day of hearing. Mr. Cameron did not testify he sold his interest to Mr. Brubaker. The Special Master specifically finds this debt was extinguished and is not a marital debt.

When a Trial Court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the Trial Court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999) (quoting *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 315 (Tenn.1987)). We find

-8-

material evidence in the record to support the finding that the debt was extinguished and is not a marital debt.

Husband's issues concerning alimony are: (1) the amount of temporary alimony; (2) the amount of periodic alimony; (3) the failure of the Trial Court to offset from alimony vested social security benefits due to Wife; and (4) the Trial Court's order that Husband make an annual payment to Wife representing the amount Wife pays as federal income tax on her alimony. We first note that the Trial Court did grant Husband a credit toward his obligation to reimburse Wife for her tax liability for any amount of Social Security benefits Wife received the prior year.

There are no hard and fast rules for spousal support decisions. *Kinard v. Kinard,* 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Trial judges have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration. *Garfinkel,* 945 S.W.2d at 748. Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Kinard,* 986 S.W.2d at 234. The purpose of long-term spousal support is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency. *Id.* Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn Code Ann. § 36-5-101(d)(1). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor's spouse's ability to pay. *Kinard,* 986 S.W.2d at 235.

Wife is 68 years old and has an eleventh grade education. The Special Master found that she has health problems, including high blood pressure, a hiatal hernia, stomach and thyroid ailments. He further found that she has no savings account, no retirement account, no money market accounts. She virtually has never worked outside the home during the parties' 45-year marriage. She has no source of income or support aside from her Husband, who owns a number of successful business enterprises and remains well able to accommodate his personal income needs despite his recent decision to retire from salaried employment in those businesses. The Special Master carefully reviewed Wife's affidavit of income and expense, allowing some of the items and disallowing others. He ordered that $744.77 of Wife's monthly alimony payments would cease when the mortgage payment in that amount on the marital home was extinguished, either by monthly payments or by Husband's paying off the mortgage. He also ordered Husband to make an annual alimony payment on March 1st to reimburse Wife for the income tax liability she will incur as a result of receipt of her monthly alimony payments. It appears the Special Master awarded Wife a monthly alimony amount that closely tracks her reasonable monthly expenses, and therefore the annual payment for her income tax liability is necessary as she will not be able to accumulate income from which to pay this expense. Considering the familiar factors set forth in Tenn Code Ann. § 36-5-101(d)(1),[2] we find the Trial Court did not err in the amount of alimony awarded to Wife.

---

[2] Those factors include: (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources; (B) The relative education

(continued...)

Husband's tenth and final issue is whether the Trial Court erred in refusing to permit him to present witnesses at the hearing on his objections to the Special Master's Report after all of the testimony had been concluded before the Special Master. The record in this case shows Husband changed counsel after hearings before the Special Master but before the matter came before the Trial Court. With new counsel, Husband had different complaints and theories about the marital estate and wanted to present additional witnesses. The Trial Court stated, "I thought I made it very clear before that this was not going to an evidentiary hearing. That should have been done before the Special Master." Husband's new counsel objected, " . . . I was not the lawyer and I don't want to second-guess the other lawyer, but they didn't . . ." The Trial Court responded:

> All that should have been presented to the Special Master. We waste our time if we don't present our evidence to the Special Master . . . . if you don't present your proof to the Special Master, the Special Master does not have the benefit of that evidence in arriving at his opinion, and basically what we have to do, is to do it all over again.

The Trial Court had the benefit of two lengthy previous hearings before the Special Master and a third hearing on the parties' objections by the Special Master and thought that was enough. The Rules of Civil Procedure provide that "[T]he Court after hearing may adopt the [Special Master's] report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Tenn. R. Civ. P. 53.04(2). Accordingly, the Trial Court has discretion to receive or refuse further evidence. Trial courts are given wide discretion in the conduct of trials, and testimony which is repetitive or cumulative may be excluded. *See Bowers v. Bowers,* 956 S.W.2d 496, 499 (Tenn. Ct. App. 1997); *Cordell v. Ward School Bus Mfg., Inc.,* 597 S.W.2d 323 (Tenn. Ct. App. 1980). We have carefully reviewed the record and find no abuse of discretion in the Trial Court's refusal to receive further evidence.

Wife is not satisfied with the distribution of marital property in several specific respects: (1) the Special Master's decreasing the value of the marital estate in Fortunes Untold because the parties' daughter owns some of the stock; (2) the failure of the Special Master to give

[2](...continued)

and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level; (C) The duration of the marriage; (D) The age and mental condition of each party; (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease; (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage; (G) The separate assets of each party, both real and personal, tangible and intangible; (H) The provisions made with regard to the marital property as defined in § 36-4-121; (I) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party; (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Wife a lien on any dividends distributed to Husband from the Corporations and to require Husband to obtain prior Court approval before Husband consents to sales of any corporate property; and (3) the Trial Court's reducing Wife's share of the marital estate by contingent liabilities which may never materialize. In addition, Wife complains generally that Husband has not revealed all of his assets and has dissipated assets, and that the Special Master's valuation was "at the very low end of the range of evidence."

The trial judge's goal is to divide the marital property in an essentially equitable manner. A division is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property. *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn Code Ann. § 36-4-121(c). Trial judges have wide latitude in fashioning an equitable division of marital property, and appellate courts accord great weight to a trial judge's division of marital property. *Id.* Thus, we will ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Id.* In this case, where the Trial Court has adopted the findings of a Special Master, we will defer to the Trial Court if there is any material evidence to support its findings. *Long,* 957 S.W.2d at 828.

We next address Wife's concerns about the Trial Court's valuation, i.e., the consideration of stock owned by the parties' daughter, the consideration of contingent business liabilities, and Wife's insistence that "Husband has not revealed all of his assets and has dissipated assets, and that the Special Master's valuation was 'at the very low end of the range of evidence.'" All of these issues are complaints about decisions made carefully and after much consideration of the evidence by the Special Master and then adopted by the Trial Court. We are convinced that the Trial Court achieved an assessment of the parties' marital assets which is as accurate as could be hoped for under all of the circumstances, and there is material evidence to support the findings of fact.

Wife complains about the failure of the Special Master to give her a lien on any dividends distributed to Husband from the Corporations or to require Husband to obtain prior Court approval before consenting to sales of any corporate property until Husband has paid Wife for her interest in the marital estate. All of the parties' income, including Wife's permanent alimony, is derived from Husband's business operations. We are not inclined to hamper those operations because we do not think such a course of action is required or wise. It appears the Special Master and Trial Court found Wife's interests to be sufficiently protected by the measures ordered, including placing Husband's stock in the custody of the Trial Court and placing liens against Husband's real property until Wife's marital distribution has been completed. We agree. Tenn Code Ann. § 36-4-121(e)(2) permits the Trial Court to "impose a lien upon the marital real property assigned to a party as security for the payment of spouse support or payment pursuant to property division." This is what the Special Master and the Trial Court did, and we think it is sufficient.

Wife also raises the issue of whether the Trial Court erred in not requiring Husband to pay her attorney fees. Trial Courts have wide discretion in awarding attorney's fees, and the

appellate court will not interfere unless there clearly has been an abuse of that discretion. *Garfinkel v. Garfinkel,* 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). In this case, Wife was awarded $443,000 in marital assets, including a judgment and lien for $221,249.49 against Husband's assets. We find the Trial Court did not abuse its discretion in holding that Wife was able to pay her own attorney fees. For those same reasons, we also decline to award Wife her attorney fees related to this appeal.

One final issue remains to be addressed in this case. Husband filed a Motion to Consider New Facts in this Court asking that we consider the fact that Wife sold the North Ridge property for $130,000. The Special Master's finding of fact as to the value of the property was made on November 30, 1998, and that finding of fact was adopted by the Trial Court on June 21, 1999. The Special Master and the Trial Court accepted the stipulated value of that property as being $100,000. The sale of the property for $130,000 was on February 10, 2000. The fact that the property was valued at $100,000 in November 1998 but ultimately sold for $130,000 in February 2000 does not change our opinion that the overall marital estate was properly valued and distributed by the Trial Court at the date of the final Judgment of Divorce, June 21, 1999.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed equally against Donald Ralph Manis and Billie Mae Manis, and their sureties, if any.

_____
D. MICHAEL SWINEY, JUDGE