IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JUNE 24, 2009 Session

# IN RE: ESTATE OF DAVID CARL COOK, DECEASED

## MELODY COOK EVANS, ET AL. v. APRIL COOK, Executrix of the Estate of David Carl Cook

Direct Appeal from the Chancery Court for Montgomery County
No. MC CH CV PB 04-61      Laurence M. McMillan, Jr., Chancellor

No. M2008-00325-COA-R3-CV - Filed October 9, 2009

This appeal involves claims made by a sister against her brother's estate in addition to a separate dispute between the sister and the brother's estate regarding how much money the estate was owed from the sale of a house owned by the brother and his siblings. The trial court referred the matters to a special master, who found in favor of the sister on some of the claims. Upon review of the special master's report, however, the trial court rejected the special master's findings in favor of the sister and ruled in favor of the brother's estate. The sister appeals, claiming that the trial court should have deferred to the special master. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

B. Nathan Hunt, Clarksville, TN, for Appellant

Keith C. Dennen, Sharon O. Jacobs, Lane Summers Moorman, Nashville, TN, for Appellee

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Marjorie Simpson died in 1995, and her will devised her entire estate to her two sons, David and James Cook. Although Marjorie did not leave anything to her daughter, Melody Cook Evans, in her will, David and James subsequently agreed to convey to Melody a one-third interest in their mother's house. David, James, and Melody then sold their mother's house for $144,900 and agreed to provide "seller financing" to the buyers in the amount of $129,900. The buyers would mail their mortgage payments to Melody, and she would deposit the checks into a joint account held in all three siblings' names. David, James, and Melody all made withdrawals from the account from time to time.

David Cook died on August 20, 2003, and his wife, April, was appointed Executrix of his estate. After David died, Melody closed the joint account containing the mortgage payments, deposited the money in an account in her own name, and began keeping the buyers' monthly mortgage payments herself.

On July 27, 2004, Melody filed a verified claim against David's estate for $41,801.47. She claimed that she had made $38,801.47 in "unsecured loans" to David over the years, and she claimed that she was the owner of $3,000 worth of furniture and paintings in the possession of the Executrix. The Executrix filed an exception to Melody's claim on August 4, 2004, asserting that all of Melody's claims were invalid.

On or about March 31, 2005, the buyers of the parties' mother's house apparently refinanced their mortgage and paid off the remaining balance of $105,166.71 through a title company. The Executrix of David's estate then filed a "Petition to Compel Delivery of Estate Assets to the Executrix and for an Accounting." According to the petition, the mortgage payoff amount was being held by a closing agent in Florida, and the Executrix sought an order requiring that the mortgage payoff amount be deposited with the clerk and master. The Executrix also alleged that Melody had refused to deliver David's share of the mortgage payments, previously held in the joint checking account, despite the Executrix's repeated demands. The Executrix requested that the trial court enter an order compelling Melody to identify the location of the mortgage payments, make an accounting regarding such payments, and pay those funds to the clerk and master pending a resolution of the parties' claims. The Executrix claimed that David's estate was entitled to an award of $13,981.12 for David's share of the mortgage payments held in the joint account, plus $35,055.57 for his one-third share of the mortgage payoff, plus interest.

An agreed order was subsequently entered, stating that the hearing on the Executrix's petition to compel delivery of the aforementioned funds would be consolidated with the hearing on the Executrix's exception to Melody's claim against the estate . On March 6, 2006, a hearing was held on both petitions before a special master. At the beginning of the hearing, counsel for the Executrix requested that an order be entered requiring the Florida title company to deposit the mortgage payoff

with the clerk and master in Montgomery County. Melody stated that she had no objection to that request. Counsel for the Executrix then explained that Melody had closed the joint account containing the mortgage payments and deposited the funds into an account in her name, and he requested that Melody be ordered to deposit those funds with the clerk and master as well. Melody did not deny that she had closed the account after David's death and placed the funds into an account in her name. She also explained that after she closed the joint account, she subsequently "accepted the monthly [mortgage] payments as part of [her] share." The special master asked Melody whether she had any objection to being required to deposit that money with the clerk and master, and Melody responded that she *did* object. She said she did not "see any need in doing that" and "tying up" the money, and she asked that she be allowed to keep the money in the separate account as part of her share.

Following a lengthy hearing, the special master issued a report on October 30, 2006. First, the special master denied Melody's claim against the estate for the furniture and paintings worth $3,000, concluding that those items belonged to David's estate. Next, the special master determined that of the $38,801.47 in "unsecured loans" Melody claimed she made to David, she was only entitled to be reimbursed for three of the alleged loans, for a total of $9,750. The special master specifically found portions of Melody's testimony "not to be credible." Next, the special master concluded that David's estate should reimburse Melody $250 for its one-third share of an accounting bill. Finally, the special master addressed the issues involving the mortgage payments and mortgage payoff. At the hearing, both parties submitted reports from their own accountants regarding the mortgage funds. David's accountant also testified at the hearing, but Melody's accountant did not. In addition, Melody's accountant's report was prepared in July of 2004, nearly two years prior to the hearing, and prior to all of the mortgage payments being made. The special master's report found the accountants' testimony and reports to be "extremely confusing" and did not accept either report as entirely accurate. Ultimately, the special master concluded that David's estate was due $2,967.91 from the mortgage payments, in addition to $35,055.57 for David's one-third of the mortgage payoff amount, for a total of $38,023.48 from the mortgage funds.

The Executrix filed objections to the special master's report, arguing that the special master erred in (1) concluding that Melody should be reimbursed for the three "loans" worth $9,750, and (2) calculating David's total share of the mortgage funds at $38,023.48 rather than $48,867.02. Specifically, regarding the mortgage funds, the Executrix claimed that David was owed $13,811.45 from the mortgage payments in addition to $35,055.57 for his one-third share of the mortgage payoff. The Executrix did not dispute the special master's award to Melody of $250 for accounting fees. Therefore, in sum, the Executrix claimed that the estate was due $48,617.02, and she asked that the estate be awarded that sum from the funds held on deposit with the clerk and master.

The chancellor subsequently entered an order stating that he had "reviewed the entire probate file on this matter," that he agreed with the Executrix's positions, and that he sustained her objections to the special master's report. Regarding the three "loans" worth $9,750, the chancellor found the testimony basically uncontroverted. Nevertheless, he found that the undisputed facts did not demonstrate that agreements existed that would entitle Melody to reimbursement. Therefore,

the chancellor denied her claims based on the three "loans." Next, the chancellor found that the Executrix's accountant's report "accurately set forth" the details of the account containing the mortgage payments, and he found that the amount owed to the estate from that account was $13,811.45, in addition to interest on the award at the rate of ten percent. The chancellor then awarded David one-third of the mortgage payoff amount, in the sum of $35,055.57. When the interest was added to the award, and the $250 accountant fee was subtracted from the award, the total award to the estate was $50,688.74, which the court ordered to be paid from the funds deposited with the clerk and master. The court ordered that $30,000 of that amount be paid directly to the estate's attorney for its previously awarded attorney's fee, and the remaining $20,688.74 be paid to the Executrix. The court ordered that the remainder of the funds held by the clerk and master be paid to Melody and her brother James.

At Melody's request, the trial court subsequently set aside its order and allowed Melody to file a response to the Executrix's objections to the special master's report. In her response, Melody argued that the chancellor should uphold the special master's findings and report because the Executrix had not presented any new evidence since the hearing before the special master, and, according to Melody, the chancellor should defer to the special master because he observed the witnesses at the hearing and judged their credibility.

On January 14, 2008, the chancellor entered another order stating that he had reviewed the entire record, including the transcript of the proceedings before the special master, and that he sustained the Executrix's exceptions to the special master's report. Melody timely filed a notice of appeal.

## II. ISSUES PRESENTED

Melody presents the following issues for review:

1. Whether the trial court abused its discretion in overturning the probate master's report;
2. Whether the trial court improperly included Melody's share of proceeds from the sale of her mother's home when disbursing funds from David's estate.

The Executrix argues that she should be awarded her attorney's fees because this appeal is frivolous. For the following reasons, we affirm the decision of the chancery court. However, we decline to award attorney's fees to the Executrix.

## III. DISCUSSION

### A. Overturning the Probate Master's Report

On appeal, Melody claims that the trial court was bound by the following standard of review in considering the special master's report:

Effect of a Master's Report. – A Master's report is in the nature of a special verdict, and exceptions to it are in the nature of a motion for a new trial; and the Court will not overrule it unless the evidence clearly preponderates against it. The burden is on the party excepting, to establish the mistake, or misconduct, or disability, alleged. Where a matter of fact, depending on conflicting testimony, and the credibility of witnesses, has been referred to the Master, his decision will not be interfered with, unless it is a plain case of error, or mistake, especially when the witnesses were examined before him. The result is, the Court will not allow an exception to the Master's report, unless the exception is clearly sustained by the weight of the evidence, or otherwise affirmatively appears to be well taken.

*Campbell v. Layne*, 250 S.W.2d 95, 98 (Tenn. Ct. App. 1952) (quoting *Gibson's Suits in Chancery* § 619). Melody claims that the trial court erred in sustaining the Executrix's objections to the special master's report because the special master was in the best position to determine the witnesses' credibility, and because the Executrix did not present new evidence or testimony to rebut the special master's findings.

The case relied upon by Melody was decided prior to the adoption of the Tennessee Rules of Civil Procedure. Tennessee Rule of Civil Procedure 53.04(2) now provides that in non-jury actions, "The court after hearing may adopt the [special master's] report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Thus, even though issues may be referred to a special master, the "trial court retains its judicial power to make the ultimate determination of the issues in the case . . . ."[1] *Franklin v. DeKlein-Franklin*, No. E2007-00577-COA-R3-CV, 2008 WL 1901113, at *8 (Tenn. Ct. App. Apr. 30, 2008). In fact, once objections to the master's report are timely filed, "it is incumbent upon the Trial Judge to review the evidence and any exhibits and if he disagrees with the findings of the Master, [to] make independent findings." *Mumford v. Mumford*, No. E2002-01338-COA-R3-CV, 2004 WL 483213, at *4 (Tenn. Ct. App. Mar. 12, 2004) (citing *Jackson v. Jackson*, No. E2001-00287-COA-R3-CV, 2001 Tenn. App. LEXIS 657, at *13-14 (Tenn. Ct. App. Sept. 5, 2001); *Fillers v. Cash*, No. 03A01-9705-CV-00186, 1997 Tenn. App. LEXIS 763, at *4-5 (Tenn. Ct. App. Oct. 31, 1997)). The trial court "cannot abdicate to the master its responsibility to make a decision on the issue in question," and it "must do more than 'rubber stamp' what the master has done." *Lakes Prop. Owners Ass'n, Inc. v. Tollison*, No. 03A01-9402-CV-00038, 1994 WL 534480, at *3 (Tenn. Ct. App. E.S. Oct. 4, 1994). "The judgment is to be that of the trial court, and not the master." *Id.*

"When the trial court rejects or modifies portions of a master's report, the court is to make its own findings based on its independent review of the evidence." *Parks v. Eslinger*, No. M1999-02027-COA-R3-CV, 2003 WL 237597, at *7 (Tenn. Ct. App. Feb. 4, 2003). The trial court "is free to reach different findings from those of the master based on the same evidence" or to "take

---

[1] Pursuant to Rule 53.04(4), the parties may "stipulate that a master's findings of fact shall be final," in which case, "only questions of law arising upon the report shall thereafter be considered." There is no indication that the parties in this case stipulated that the special master's findings would be final.

additional evidence and to base its findings on that." *Id.* The decision to receive or refuse further evidence is within the trial court's discretion. *Manis v. Manis*, 49 S.W.3d 295, 305 (Tenn. Ct. App. 2001); *Barham v. Cooper*, No. 101702-3, 1997 WL 542922, at *7 (Tenn. Ct. App. W.S. Sept. 5, 1997).

"Because [Rule] 53.04(2) puts no limitations on the discretion of the court to adopt, modify, or reject in part or in whole the master's report," we review the trial court's findings which reject or modify the special master's findings under the general standard of Tennessee Rule of Appellate Procedure 13(d), as we would any other trial court finding. *Parks*, 2003 WL 237597, at *6. Our review is de novo upon the record, with the trial court's findings of fact accompanied by a presumption of correctness unless the evidence preponderates otherwise. *Id.*; *Pruett v. Pruett*, No. E2007-00349-COA-R3-CV, 2008 WL 182236, at *4 (Tenn. Ct. App. Jan. 22, 2008) (citing *Dalton v. Dalton*, No. W2006-00118-COA-R3-CV, 2006 WL 3804415, at *3-4 (Tenn. Ct. App. Dec. 28, 2006)).

Applying these principles to the case at bar, we reject Melody's assertion that the trial court could not "interfere with" the special master's report unless the Executrix demonstrated "a plain case of error, or mistake." The trial court was required to "exercise its authority as a court of original jurisdiction to resolve the issue at hand." *Lakes Prop. Owners Ass'n, Inc.*, 1994 WL 534480, at *4. Here, the chancellor properly reviewed the entire record, including the transcript of the proceedings before the special master, and made his own findings based upon his independent review of the evidence. Thus, the trial court did not err in applying an incorrect "standard of review" in considering the special master's report.

Next, Melody claims that the chancellor "had stated on a number of occasions, in open court," that he did not intend to overturn the special master's findings unless the Executrix presented new evidence or testimony to rebut the special master's findings. Accordingly, Melody argues that the chancellor erred in rejecting the special master's findings when the Executrix did not present additional evidence. However, Melody concedes that there is nothing in the record to prove that the chancellor made such statements, as there is no transcript of the hearings at which these statements were allegedly made, and the chancellor never entered an order ruling that he would not alter the special master's report without additional evidence. As such, we find that the trial court did not abuse its discretion in making a decision based on the record before it without receiving further evidence. *See Manis*, 49 S.W.3d at 305.

We note that Melody's brief on appeal does not point to any evidence in the record that would indicate that the chancellor improperly calculated David's share of the mortgage funds, nor does she cite any specific evidence to suggest that the trial court erred in denying her three claims against the estate. She simply cites the special master's report and argues that the chancellor erred in failing to defer to the special master. For the reasons already discussed, we respectfully disagree.

### B.    The Funds Deposited with the Clerk and Master

Next, Melody argues that the proceeds from the sale of the mother's home "should not have been affected whatsoever by the probate of [David's] estate." She claims that the estate's attorney's fees "should only be payable from assets of [David's] estate and should not be paid from proceeds that were due to [Melody] from the sale of her mother's home, which is wholly unrelated to [David's] estate." In short, she claims that the trial court's order "pays for the attorney's fees for the estate from proceeds that should have been disbursed to [Melody] and James Cook . . . ."

Again, after Melody filed her claim against the estate, the Executrix filed a petition to compel the delivery of estate assets to the Executrix, seeking an order that would (1) require Melody to deposit the money from the joint account (containing the mortgage payments) with the clerk, and (2) require the mortgage payoff then being held by a title company in Florida to be deposited with the clerk. At the hearing before the special master, Melody said that she had no objection to the mortgage payoff being deposited with the clerk, but she asked that the court not order her to deposit the money from the joint account with the clerk. Rather, she asked that the money from the joint account be credited against "her share." It was clear that David was owed *some* money from the joint account. Obviously, then, David's share of the money from the joint account would have to be awarded from the other funds on deposit with the clerk and master – i.e., the mortgage payoff.

The trial court determined the total amount due to David's estate from the mortgage payoff and from the joint account to be $50,688.74, which would be paid from the funds held by the clerk and master. However, because the trial court had previously approved as reasonable the estate's attorney's fee of $30,000, the court ordered that $30,000 *of the money that was awarded to the estate* would be paid directly to the estate's attorney rather than the Executrix. The estate then received only $20,688.74 from the funds held by the clerk and master. The remainder of the funds was then released to Melody and James, with the exception of $3,804.02 that was paid in satisfaction of an attorney's lien filed by Melody's own previous attorney. To the extent that Melody argues that she was denied any funds from the mortgage payoff due to the $30,000 being paid to the estate's attorney, she is mistaken.

Finally, Melody claims that the trial court's order is "clearly erroneous," because once David's estate was awarded $50,688.74 to be paid from the mortgage payoff, there was not enough money remaining on deposit with the clerk and master to pay her one-third of the payoff and to pay her brother, James, the other one-third of the payoff. Again, Melody apparently overlooks the fact that she retained the entire balance of the joint account in order that it could, as she requested, be credited against "her share." Melody also complains that the trial court's order did not specify how the remaining funds were to be divided between her and James. However, she admits that she did not request an order from the trial court dividing the remainder of the funds between her and James. Thus, we find no error in the trial court's order.

### C. *Attorney's fees on Appeal*

The Executrix contends that the estate should be awarded attorney's fees because Melody's appeal was frivolous. Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court. **Whalum v. Marshall**, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006) (citing *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)). "Successful litigants should not have to bear the expense and vexation of groundless appeals." **Id.** at 181 (quoting *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977)). An appeal is frivolous when it has "no reasonable chance of success" or is "so utterly devoid of merit as to justify the imposition of a penalty." **Id.** (citing *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999)). We exercise our discretion under this statute sparingly so as not to discourage legitimate appeals. **Id.** In this case, we find it equitable to decline to award attorney's fees.

### IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Further, we decline to award attorney's fees to the appellee. Costs of this appeal are taxed to the appellant, Melody Cook Evans, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.