IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2025 Session

## ANNE ELISE LITTLETON JAKOBIK v. ERIK CARTER JAKOBIK

**Appeal from the Chancery Court for Cheatham County**
**No. 17914      Larry J. Wallace, Judge**

_____

#### No. M2024-00155-COA-R3-CV

_____

In this divorce with no children, the trial court declared the parties divorced and referred the property issues and requests for attorney's fees to a special master. The special master recommended an equal division of the marital estate and that each party pay their own attorney's fees. The wife objected to these recommendations. After a hearing, the trial court adopted the special master's findings and recommendations, with one small exception. On appeal, the wife challenges the division of the marital estate and the failure to award attorney's fees. We affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Fred C. Dance, Franklin, Tennessee, for the appellant, Anne Elise Littleton Jakobik.

Cherie Cash-Kristinus, Murfreesboro, Tennessee, for the appellee, Erik Carter Jakobik.

#### OPINION

#### I.

After more than ten years of marriage, Anne Elise Littleton Jakobik ("Wife") filed for divorce from Erik Carter Jakobik ("Husband"). Following a hearing, the trial court "declare[d] the Parties divorced pursuant to Tennessee Code Annotated § 36-4-129." It referred the remaining contested issues, including the division of the marital estate and the requests for attorney's fees, to a special master.

The most valuable marital asset was the marital residence. By agreement, the marital home was sold during the pendency of the divorce. But the parties could not agree on an equitable division of the net proceeds. So the proceeds were held in trust pending a judicial decision.

Proof at the hearing revealed that Husband, a salaried employee in the pest control business, earned substantially more than Wife. During the marriage, Wife earned an hourly wage from her employment at a grocery store and then a daycare center. Due to this income disparity, Husband paid most of the marital expenses, including the home mortgage. Wife paid for groceries and clothes. That changed after Wife's parents decided that Wife should quit her job, further her education, and change careers. To that end, they offered to pay off the remaining mortgage balance so that Wife "could go back to school and work part time." Husband and Wife agreed. Wife's parents then paid the remaining mortgage balance of $99,130.42. Although Wife then quit her job and enrolled in school, she completed only one semester, electing to withdraw during her second semester.

Wife cited Husband's "hidden addiction" to alcohol as the reason she was forced to abandon her education. During her first semester, Husband admitted that he was an alcoholic. Both Wife and Wife's mother testified that they were not aware of Husband's addiction until then. Over the next several months, Husband was admitted to various rehabilitation centers and hospitals for intensive treatment. Wife claimed she quit school to support Husband in his time of need. Yet she conceded that she never returned to school even after filing for divorce because she "wanted to do something else."

Wife argued that she was entitled to a $99,130.42 credit before any division of the remaining sale proceeds. She planned to use the money to reimburse her parents for the mortgage payoff. Still, she admitted that the payment was intended as a gift to her and Husband and "w[as]n't supposed to be paid back." Wife's mother agreed. As she recalled, the parties never discussed repayment. And there was no documentation evidencing any payment conditions or expectations.

Wife asked for an award of attorney's fees. She emphasized Husband's higher earning capacity and his fault in the demise of the marriage. In her view, Husband "caused the majority of the marriage to fail." Despite his deception, she had stayed and supported him through multiple hospitalizations and treatments for his "hidden addiction." But after another alcohol incident in 2019, she decided to file for divorce.

Upon consideration of the evidence, the special master issued a report with findings and recommendations for the court. She found that "[t]here was no evidence presented to support the allegations that Husband dissipated any marital funds." Nor was there evidence "that Wife was required to drop out of school because of Husband's addiction." The special master classified the parties' property and debts as separate or marital. And she recommended that the parties' marital property, including all proceeds from the sale of the

2

marital home, be divided equally. Because both parties would be able to pay attorney's fees from these assets, the special master recommended that each pay their own attorney's fees.

Wife filed objections to the special master's report. She insisted that the equal division of proceeds from the sale of the marital home was erroneous. In her view, "the parties had an agreement or contract" that Wife's parents would pay off the mortgage in exchange for her going to school, and Husband's alcoholism "constitute[d] a breach in the agreement of the parties and [wa]s a failure of consideration" because it caused Wife to quit school. Based on these facts, she claimed entitlement to a credit for the mortgage payoff before any division of the proceeds. She complained that the special master recommended that she remain jointly responsible for Husband's credit card debt. And she contended that an award of attorney's fees was warranted because Husband "was responsible for the breakup of the marriage and [wa]s in a much better position to earn money in the future."

Following a hearing on Wife's objections, the court approved and adopted most of the special master's findings and recommendations. The court made only one change: reallocating responsibility for the credit card debt to Husband. Otherwise, it found that the report recommended "a fair and equitable division of the marital estate." And it concurred in the finding that each party should be responsible for payment of his or her own attorney's fees.

## II.

Wife raises two issues on appeal. She challenges the equal division of the proceeds from the sale of the marital residence. And she insists that the court erred in declining to award her attorney's fees.

When reviewing the trial court's order on a special master's report, we apply a particular standard of review. A concurrent finding of fact by a special master and a trial court generally is conclusive on appeal. Tenn. Code Ann. § 27-1-113 (2017); *Manis v. Manis*, 49 S.W.3d 295, 301 (Tenn. Ct. App. 2001). The concurrent finding can be overturned on appeal only where "it is upon an issue not proper to be referred [to the special master], where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence." *Manis*, 49 S.W.3d at 301 (citing *Long v. Long*, 957 S.W.2d 825, 828 (Tenn. Ct. App. 1997); *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996); *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995)). So "we must affirm if there is any material evidence to support the trial court's concurrence." *In re Est. of Ladd*, 247 S.W.3d 628, 636-37 (Tenn. Ct. App. 2007); *Manis*, 49 S.W.3d at 302.

A.

Trial courts have broad discretion to fashion an equitable division of the marital estate "in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1) (2021); *see Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The factors in Tennessee Code Annotated § 36-4-121(c) should guide the court's decision. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). To reach an equitable division, the trial court must weigh the relevant factors in light of the proof at trial. *Larsen-Ball*, 301 S.W.3d at 234; *Batson*, 769 S.W.2d at 859. We will defer to the trial court's decision "unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Larsen-Ball*, 301 S.W.3d at 234 (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)).

As she did in the trial court, Wife challenges the division of the proceeds from the sale of the marital residence. In her view, the statutory factors support a different result. She specifically references factors (1), (2), (4), and (5).

Factor (1) focuses on the duration of the marriage. Tenn. Code Ann. § 36-4-121(c)(1). Husband and Wife were married for thirteen years, which the parties seem to agree is a "long-term" marriage. Absent "countervailing considerations," the length of this marriage weighs in favor of the court's division. *Phelps v. Phelps*, No. M2010-00856-COA-R3-CV, 2011 WL 2535026, at *6 (Tenn. Ct. App. June 24, 2011); *Grant v. Grant*, No. M2014-01835-COA-R3-CV, 2016 WL 2898434, at *8 (Tenn. Ct. App. May 12, 2016) ("An essentially equal division in a long-term marriage . . . is appropriate.").

Factors (2) and (4) consider the parties' earning capacities, financial liabilities and needs, and relative ability to acquire capital assets and income in the future. Tenn. Code Ann. § 36-4-121(c)(2), (4). Wife complains that she has always earned less than Husband and that she "is disadvantaged in future employment and earnings potential." During the marriage and at the time of trial, Husband had a substantially higher income than Wife. Even so, Wife had no outstanding debts. She lived rent free in her parents' condominium. She never claimed that she lacked sufficient income to meet her daily living expenses. And she received a significant amount of cash in the division of the marital estate. By contrast, Husband was solely responsible for repayment of the marital debt. He was also paying rent and making payments toward his sizeable medical bills. His monthly income and expense statement showed a net deficit.

Factor (5) analyzes the "contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property." *Id.* § 36-4-121(c)(5)(A). According to Wife, this factor should weigh heavily in her favor because Husband dissipated substantial marital assets. "Dissipation" refers to "wasteful expenditures which reduce the marital property available for equitable distributions." *Id.*

4

§ 36-4-121(c)(5)(B). It involves "intentional or purposeful conduct" by a spouse who "uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down." *Altman v. Altman*, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005). Thus, dissipation is different from discretionary spending, which is spending "typical of the parties' expenditures throughout the course of the marriage." *Larsen-Ball*, 301 S.W.3d at 235. Dissipation is often intended to "hide, deplete, or divert" marital property. *Id.* (quoting *Altman*, 181 S.W.3d at 682).

Wife had the burden of proving that dissipation occurred. *See id.* She argues that Husband dissipated marital assets by spending on alcohol and resultant medical treatments, paying rent after moving out of the marital home, and using marital funds to prepare the marital home for sale. Material evidence at the hearing supports the concurrent findings that Wife failed to meet her burden of proof. *See Manis,* 49 S.W.3d at 301. She presented no evidence that the cited expenditures were atypical of spending during the marriage or that they were intended to hide, deplete, or divert funds from the marital estate. Both parties purchased alcohol during the marriage. There was no evidence that Husband's alcohol purchases or rent payments were excessive. Wife conceded that significant improvements needed to be made before listing the marital home for sale. Husband's use of marital funds to make those improvements cannot be characterized as "wasteful." Tenn. Code Ann. § 36-4-121(c)(5)(B).

Finally, Wife insists that she was entitled to a much larger share of the sale proceeds based on her parents' payoff of the mortgage debt.[1] The financial contribution of Wife's parents certainly contributed to the preservation and appreciation of the marital estate. *See id.* § 36-4-121(c)(5)(A). It weighs in Wife's favor. But it does not change the overall analysis. Husband made significant financial contributions as well. It is undisputed that he paid the vast majority of the marital expenses throughout this marriage.

Wife seeks a "more equitable" division of the marital estate. But it is not our role to tweak the court's division. *Morton v. Morton*, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005). After thorough examination of the record and the relevant factors, we find material evidence to support the concurrent factual findings of the special master and the trial court. *See Manis,* 49 S.W.3d at 301. So we affirm the division of property.

---

[1] Wife argues that she should have been awarded the payoff amount either as her separate property or as part of her share of the marital estate. To the extent that she questions the court's classification of the parties' assets and debts, we deem this issue waived. This argument does not fall within the scope of her stated issues. *See Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). Nor did she establish that she was entitled to repayment of the mortgage payoff under a contract theory. *See Manis*, 49 S.W.3d at 301.

B.

Wife also complains that the court erred in declining to award her attorney's fees as alimony in solido.[2] *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) ("It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido."); Tenn. Code Ann. § 36-5-121(h)(1) (2021) ("[A]limony in solido may include attorney fees, where appropriate"). Whether to award attorney's fees is a discretionary decision. *Gonsewski*, 350 S.W.3d at 113. As with all alimony awards, the decision must be guided by consideration of the relevant statutory factors. *Id.*; Tenn. Code Ann. § 36-5-121(i). The two most important considerations are need and ability to pay. *Gonsewski*, 350 S.W.3d at 110; *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

"A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses." *Gonsewski*, 350 S.W.3d at 113. And there is material evidence in this record to support the concurrent findings that Wife received adequate property in the division to pay her own attorney's fees.

For his part, Husband requests an award of attorney's fees incurred on appeal. An appellee properly requests an award of attorney's fees on appeal "by raising it in the body of the brief, adequately developing the argument, and specifying that relief in the brief's conclusion." *Charles v. McQueen*, 693 S.W.3d 262, 284 (Tenn. 2024). Because Husband failed to do so, this issue has been waived.

**III.**

Wife has appealed a question of fact that was referred to a special master, whose factual findings were adopted by the trial court. Those findings are supported by material evidence. She also has questioned the exercise of the trial court's discretion in dividing the marital estate and in declining to award attorney's fees. Discerning no abuse of discretion, we affirm.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[2] Wife cited a different statutory basis for her attorney's fee request in the complaint. *See* Tenn. Code Ann. § 36-5-103(c) (Supp. 2020). But at the hearing before the special master, she repeatedly referenced the alimony factors in support of her request. *See* Tenn. Code Ann. § 36-5-121(i). So we conclude that this issue was tried by consent. *See* TENN. R. CIV. P. 54.03.