IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 10, 2012 Session

## HAROLD DEAN MCDANIEL v. KIMBERLY RUTH MCDANIEL

**Appeal from the Circuit Court for Hamilton County**
**No. 07D183      Neil Thomas, Judge**

---

**No. E2012-00007-COA-R3-CV-FILED-JANUARY 30, 2013**

---

This appeal arises from a divorce. Harold Dean McDaniel ("Husband") sued Kimberly Ruth McDaniel ("Wife") for divorce in the Circuit Court for Hamilton County ("the Trial Court"). After a long and contentious legal battle, including an earlier appeal to this Court and subsequent remand for a new trial, the Trial Court entered its supplemental final decree of divorce. Wife appeals, raising a number of issues. We hold that the Trial Court did not adequately compute child support, and, therefore remand for its proper computation. We also modify the allocation of guardian ad litem fees. Otherwise, we affirm the judgment of the Trial Court. We affirm the judgment of the Trial Court as modified, in part, and vacated, in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified, in part, and, Vacated, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

Samuel F. Robinson III, Chattanooga, Tennessee, for the appellant, Kimberly Ruth McDaniel.

James D. R. Roberts, Jr., and, Janet L. Layman, Nashville, Tennessee, for the appellee, Harold Dean McDaniel.

## OPINION

## Background

Husband sued Wife for divorce in January 2007. Husband alleged that Wife was guilty of inappropriate marital conduct. Numerous hearings were conducted over the course of more than a year. In December of 2008, the Trial Court entered its final decree *nunc pro tunc* to July 2008 granting, among other things, Husband a divorce. Wife appealed to this Court. In *McDaniel v. McDaniel*, No. E2009-00447-COA-R3-CV, 2010 WL 2134146 (Tenn. Ct. App. May 27, 2010), *no appl. perm. appeal filed*, we affirmed the judgment of the Trial Court with respect to its having awarded Husband a divorce on the basis of Wife's inappropriate marital conduct. We, however, held that the Trial Court erred in considering the contents of an unlawfully obtained audio tape featuring Wife. The tape had proved heavily damaging to Wife's credibility, and it appeared that the Trial Court's judgment was tainted by the tape's admission. Thus, in *McDaniel*, we vacated the remainder of the Trial Court's judgment with respect to Husband and Wife and remanded for a new trial.

On remand, the parties proceeded with a new trial. The parties stipulated to the evidence from the earlier trial, and additional evidence was presented to the Trial Court. The record in this case is relatively large with much of it not germane to the issues now on appeal.[1] We will confine our review of the background in this case to those facts relevant to the issues now on appeal.

The parties were married in 1997. Wife had three children from a previous marriage: Mark, Kris, and Marilyn. Wife and Husband had three children during their marriage: Zachary, Jacob and Malorie. A major impetus for the divorce was an affair that Wife had with one Chris Lawson. In the course of the litigation, Wife admitted that she had a brief affair with Mr. Lawson. For her part, Wife alleged sexual abuse by Husband against one of the children. The record contains a variety of exhibits pertaining to these allegations of abuse, but the allegations apparently did not result in any action taken against Husband. The Trial Court, in a 2009 memorandum and order, blamed Wife for prolonging the litigation and found her claims of sexual abuse against Husband to be "totally unfounded." Another source of contention and much testimony in this case was the question of Husband's temper. Several witnesses testified to incidents purporting to show Husband's violent temper. For example, Stephanie Buchanan, a waitress at Ryan's restaurant, testified about one such incident. According to Ms. Buchanan, she saw Husband essentially throw a child in the car and close the door on her legs. Husband disputed allegations that he engaged in any abuse.

---

[1]For instance, there are numerous pages of testimony devoted to whether Wife continued to smoke cigarettes, specific instances of when Wife smoked, and whether Wife smoked around the children.

One of the issues now on appeal concerns the marital home and Wife's contributions towards it. The parties' marital residence was located at Colonial Way in Hamilton County. The marital residence was purchased with the assistance of funds contributed by Wife in the amount of $83,613.71. These funds became available as a result of Wife's having sold her house owned by Wife before the marriage. Wife testified that she and Husband had an agreement whereby her money used for the marital residence would belong to Wife separately. Husband, on the other hand, testified that he had no agreement with Wife that the funds generated from the sale of Wife's house were intended to remain Wife's separate property. Husband stated that he wished that neither he nor Wife would make a claim to those funds, but rather they should be "for the children." With respect to incomes, Wife testified that her monthly income was $3,952.00 at the time of trial. Husband testified that his monthly income was $5,165.33.

In a hearing following the remand of this case, John Gentry ("Gentry") testified. Gentry's testimony addressed Wife's lifestyle. Wife's counsel registered some disquiet about the calling of Gentry to testify, as Wife's counsel alleged that Husband had failed to provide a witness list ten days before trial as required by the local rule. The Trial Court permitted the testimony of Gentry to proceed. Gentry, a stepson of Wife's prior ex-husband, stated that he lived with Wife for two months. Gentry's testimony portrayed Wife's conduct in a highly negative light, including allegations of marijuana use and underage drinking in Wife's home. Gentry also testified to Wife's use of methamphetamine and her abuse of prescription medication.

In December of 2011, the Trial Court entered its supplemental final decree of divorce[2], finding and holding in relevant part: 1) Wife was to pay $960.00 in child support per month, with an arrearage of $44,630.00; 2) Wife was ordered to pay Husband $25,000 in attorney's fees; and, 3) Wife was ordered to pay guardian ad litem fees of $5,875.14. Wife appeals to this court.

## Discussion

Though not stated exactly as such, Wife raises five issues on appeal: 1) whether the Trial Court erred in admitting the testimony of Gentry despite Husband's noncompliance with the Trial Court's local rules; 2) whether the Trial Court erred in not giving Wife credit for the contribution she made to the purchase of the parties' marital home with her pre-

---

[2]The Trial Court incorporated its earlier final order of 2008 into the new supplemental decree, but went to great lengths to emphasize that this time it was in no way relying on the audio tape that caused the first judgment to be vacated. The 2008 order also awarded Husband the marital residence, with a net equity of $150,000, and required him to pay $75,000 to Wife.

marital assets; 3) whether the Trial Court erred in its computation of child support; 4) whether the Trial Court erred in its award of attorney's fees; and, 5) whether the Trial Court erred in assessing guardian ad litem fees against Wife.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in admitting the testimony of John Gentry despite Husband's noncompliance with the Trial Court's local rules. Local Rule 8.02(c) in Hamilton County requires that a witness or exhibit list be filed 10 days before trial. Otherwise, the witnesses or exhibits are not to be utilized pursuant to the rule. Wife argues that she was unfairly surprised by the calling of Gentry as a witness due to Husband's failure to comply with the rule, and thus, the Trial Court erred by allowing Gentry's testimony.

We disagree with Wife. First, we observe that Wife failed to comply with the rule as well, by submitting her own witness list untimely. Furthermore, it does not appear that Wife objected to Gentry's testimony. These statements were made at the hearing:

> MR. ROBINSON: Judge, if I could just make a – I would just like to bring the Court's attention – and, granted, I provided my witness list late to Mr. Batson. So I'm just going to tell you that on the front end. I have not been provided a list of witnesses or exhibits or anything from Mr. Batson so I have no idea who he's calling. I haven't had a chance to contact these people. I just thought I would bring that to the court's attention.

> MR. BATSON: I just told him the same day he told me about the two teachers. John Gentry in a letter, and I told him in here Monday.

> THE COURT: Okay.

We find Wife's counsel's statements with regard to Gentry's testimony too ambiguous to be considered an objection. Indeed, the word 'objection' is not to be found in the transcript at the relevant point. Even if we did treat Wife's counsel's statements as an

objection to Gentry's testimony, we note that trial judges have wide discretion in waiving their local rules. We find no reversible error in the Trial Court's allowing Gentry's testimony.

We next address whether the Trial Court erred in not giving Wife credit for the contribution she made toward the purchase of the parties' home with her pre-marital assets. We first review the law pertaining to transmutation and property division in divorces. As our Supreme Court has explained:

> Tennessee is a "dual property" state because its domestic relations law recognizes both "marital property" and "separate property." *See generally* Tenn. Code Ann. § 36-4-121; *Eldridge v. Eldridge*, 137 S.W.3d 1, 12 (Tenn. Ct. App. 2002). When a married couple seeks a divorce, the "marital property" must be divided equitably between them, without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). "Separate property" is not part of the marital estate and is therefore not subject to division. *See Cutsinger* [*v. Cutsinger*], 917 S.W.2d [238, 241 (Tenn. Ct. App. 1995)]. Thus, it is imperative that the parties, the trial court, or both identify all of the assets possessed by the divorcing parties as either marital or separate so that a proper division can be accomplished.

*Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009).

Our Supreme Court further explained in *Snodgrass*:

[S]eparate property may be deemed marital by operation of law under theories of commingling or transmutation. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002).

\* \* \*

This Court addressed the related doctrines of commingling and transmutation for the first time in *Langschmidt* and adopted the following explanation:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . . [Transmutation] occurs when separate

-5-

property is treated in such a way as to give evidence of an intention that it become marital property . . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

81 S.W.3d at 747 (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)).

*Snodgrass*, 295 S.W.3d at 247, 256.

Regarding division of a marital estate, our Supreme Court has explained:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

* * *

In a proceeding for divorce or legal separation, the trial court is authorized, prior to determining the support and maintenance of one party by the other, to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1) (2005). The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate. *See Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The division of assets is not a mechanical process and trial courts are afforded considerable discretion. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

*Keyt v. Keyt*, 244 S.W.3d 321, 327-28 (Tenn. 2007) (footnote omitted).

Further, our Supreme Court has instructed:

[M]arital property must be divided equitably between the parties based on the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c) without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). Section 36-4-121(a)(1) requires an *equitable* division of marital property, not an *equal* division. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

*Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010) (emphasis in original).

Tennessee Code Annotated § 36-4-121 (c) provides:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

    (1) The duration of the marriage;
    (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
    (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
    (4) The relative ability of each party for future acquisitions of capital assets and income;
    (5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage

earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121 (c) (Supp. 2012).

Wife argues that she should have been given credit for $83,613.71 in pre-marital assets she paid as a down payment on the parties' marital home. In the Trial Court's oral ruling as part of its 2008 order, incorporated into the December 2011 final decree, the Trial Court specifically found transmutation as to this money. On appeal, Wife essentially argues that her earning power is less than Husband's, and, therefore, the Trial Court should have credited Wife with her pre-marital contribution.

We do not find Wife's argument compelling. Wife's pre-marital contribution became part of the marital estate, the division of which was within the Trial Court's sound discretion. The evidence in the record on appeal does not preponderate against the Trial Court's finding of transmutation or its division of the marital property as being equitable. Given that, we affirm the Trial Court as to this issue.

We next address whether the Trial Court erred in its computation of child support. The child support history of this case is long and winding. In the 2008 order, the Trial Court explained how Wife's child support arrearage would be calculated:

[The Trial Court takes] the difference in the child support calculations of the plaintiff ($1031.00) and defendant ($888.00) using the midpoint number to determine child support arrearage from October 2007 to the present. The

midpoint amount for child support is $960.00 per month and the defendant Kimberly Ruth McDaniel owes $9,600.00 from October 24, 2007 thru July 28, 2008 and continuing at $960.00 a month until further Ordered of the Court.

However, the child support worksheet attached to this order states a final child support order of $290, and thus is inconsistent with the figures mentioned by the Trial Court in its order. Wife also asserts on appeal that the Trial Court was mistaken as she did not submit either worksheet. In January 2009 before our remand of *McDaniel*, Wife filed a petition for modification of child support, citing changed circumstances. In the Trial Court's supplemental final decree of December 2011:

[T]he Court finds the child support was set at $960.00 per month for the Defendant, Kimberly McDaniel to pay beginning on October 24, 2007 and until further Orders of the Court. Unpaid child support beginning October 24, 2007 and continuing through September 24, 2011 totals $46,080.00, the Defendant is given credit for the four payments made to the State of Tennessee in 2009 totaling $1,450.00 which leaves a total arrearage as of September 24, 2011 of $44,630.00. The Court further finds this amount is a judgment against the Defendant, Kimberly McDaniel and is a set off against the award of any equity that the Defendant is entitled to in the homeplace.

The following exchange on the subject of child support occurred in the judge's oral memorandum opinion, attached to the order:

THE COURT: I am going to reaffirm my previous findings, and the order may reflect that with the following exceptions: Child support, I'm still not satisfied, Mr. Batson, has been calculated correctly, because she has got three children and a grandchild living with her for which she is providing support. That needs to be taken into account in the child support calculations.

MR. BATSON: The only - - well, she is getting child - - the two children are adults. Chris and Mark are adults. The other child was born out of wedlock, and we don't have to pay for that one. She gets child support for that one or did, because it was used to buy drugs is what you heard. I don't think she gets credit for a grandchild.

\*\*\*

THE COURT: I'm going to leave it at 960.

-9-

MR. ROBINSON: I think that we've asked Your Honor to modify it. Actually it was on a prior motion before the Court when she went on TTD because of an on-the-job injury that Mr. Schwall filed. I think there is a motion before the Court to modify it.

\*\*\*

THE COURT: It stays at 960 . . . .

The record contains no additional child support worksheet for the December 2011 supplemental final decree. The two child support worksheets contained in the record as exhibits, as well as a third child support worksheet attached to the Trial Court's 2008 order, do not satisfy the worksheet requirement as these worksheets are inconsistent with the child support ordered. Given the inconsistent worksheets in the record, we simply lack the necessary information to properly review the Trial Court's child support determination. *See Miller v. Miller*, No. E2010-00225-COA-R3-CV, 2011 WL 1641888, \*3 (Tenn. Ct. App. April 29, 2011), *no appl. perm. appeal filed*. The child support worksheet must be included in the record, and none of these worksheets in the record is consistent with the Trial Court's child support determination. As reluctant as we are to prolong this controversy, we vacate the Trial Court's judgment as to child support and remand to the Trial Court with respect to this issue so that an accurate child support worksheet can be prepared, considered by the Trial court, and entered into the record.

We next address whether the Trial Court erred in its award of attorney's fees. For attorney's fees in a divorce case, courts consider factors that also pertain to alimony awards. An award of alimony in solido for payment of attorney's fees should be based on the factors set forth in Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking attorney's fees does not have adequate funds to pay his or her legal expenses. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Conversely, a spouse with sufficient property or income to pay his or her attorney's fees is not entitled to be compensated. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

The Trial Court, in its 2009 memorandum and order, found that Wife had prolonged this litigation. We find nothing in the record to call this finding by the Trial Court into question. We believe the Trial Court acted within its sound discretion in denying Wife's request for attorney's fees and awarding attorney's fees to Husband in the amount awarded. The Trial Court committed no reversible error in awarding attorney's fees to Husband.

Finally, we address whether the Trial Court erred in assessing guardian ad litem fees against Wife. "In awarding guardian ad litem fees in a custody case, the trial court is

given wide discretion, and this court will not interfere in the exercise of that discretion absent a clear showing of abuse." *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005). It appears from the record that the Trial Court considered the conduct of Wife's father, Homer Jerrods, in making Wife totally responsible for guardian ad litem fees. Mr. Jerrods, not a party on appeal, allegedly had engaged in an outburst against the guardian ad litem after court which resulted in a contempt charge. However, in the supplemental decree of divorce, the Trial Court dismissed the contempt charge against Mr. Jerrods. With the Trial Court's reasoning on this issue relying so seemingly significantly on this dismissed charge of contempt against Mr. Jerrods, we find it inappropriate for Wife to shoulder the entire guardian ad litem fee. Rather, we modify the award of guardian ad litem fees such that it be paid in equal amounts by Wife and Husband.

In summary, we find no reversible error with respect to the Trial Court's decisions to allow Gentry's testimony; finding transmutation with respect to wife's pre-marital contributions to the marital home and the division of the marital property; and, the award of attorney's fees. We, however, modify the Trial Court's order with respect to guardian ad litem fees to make each party responsible for fifty percent of those fees. Finally, we vacate and remand the judgment of the Trial Court as it pertains to child support due to a lack of proper documentation in the record for the Trial Court's determination as to child support.

## Conclusion

The judgment of the Trial Court is affirmed as modified, in part, and, vacated, in part. We remand this cause to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed one-half against the Appellant, Kimberly Ruth McDaniel, and her surety, if any; and, one-half against the Appellee, Harold Dean McDaniel.

_____
D. MICHAEL SWINEY, JUDGE