IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 15, 2013

## VICTOR R. PETERSON v. KATHLEEN A. PETERSON

**Appeal from the General Sessions Court for Morgan County**
**No. 2010-DV-12    Michael A. Davis, Judge**

---

**No. E2013-00878-COA-R3-CV-FILED-JANUARY 31, 2014**

---

This is the second time[1] this divorce case has been before this Court. Victor R. Peterson ("Husband") filed the first appeal. We remanded the case to the trial court because we were "unable to determine what property was awarded to [Kathleen A. Peterson ("Wife")] as . . . equitable division of property and what property was awarded as alimony *in solido*." *Peterson*, 2012 WL 1413890 at *3. On remand, the trial court classified the parties' property, valued all of the marital property except for some miscellaneous personal property, decreed a division of the marital property, and awarded Wife $10,000 in alimony *in solido*. Wife appeals. She argues that the division of marital property is not equitable and that the alimony award is inadequate. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Joe R. Judkins, Oak Ridge, Tennessee, for the appellant, Kathleen A. Peterson

Robert W. Wilkinson, Oak Ridge, Tennessee, for the appellee, Victor R. Peterson

---

[1] *See **Peterson v. Peterson***, No. E2011-01928-COA-R3-CV, 2012 WL 1413890 (Tenn. Ct. App. E.S., filed Apr. 23, 2012)

# OPINION

## I.

Husband and Wife were married in July 1983. No children were born of their union. The marriage was the second for both. They separated some 25 years later, on November 18, 2008, after Husband savagely assaulted Wife. Husband stabbed her multiple times, beat her head against a dresser, and set fire to their home with Wife inside. According to Wife, the attack was unprovoked and stemmed from Husband's unfounded claim that she was having an affair. As a result of the attack, Wife underwent surgery for a stab wound that perforated her heart. In addition, she sustained scarring of her chest and face. She required counseling for post-traumatic stress disorder. She testified that her whole life had changed since the attack. She suffered nightmares and panic attacks and found it difficult to go to work or otherwise function. Husband testified he had little memory of the assault. Initially, he was charged with multiple felonies. He entered into a plea agreement pursuant to which he was convicted of aggravated assault. He received a three-year sentence.

Wife was awarded a divorce on stipulated grounds. The case proceeded to trial in August 2011 on the issues of division of property and Wife's request for alimony. Wife submitted a statement of her monthly expenses, but testified she failed to include some $14,000 in legal fees that she had charged to her credit card. Wife earned about $3,000 a month and had approximately $3,100 in monthly expenses. She requested that the court take into account the marital assets Husband had depleted to fund the defense of the criminal prosecution arising out of the assault on Wife.

Since the parties separated, Husband had retired. He lived on $1,953 per month in social security benefits; after deducting taxes and his health insurance premium, he had a monthly take-home of $1,727. He testified that he expected to soon receive a "pay-out" of at least $271 per month from a retirement fund with Celanese Corporation, where he was employed before the marriage. His monthly expenses were about $1,700.

Husband testified he paid his criminal defense attorney, Gary McDonald, $34,000 out of an inheritance he received from his mother's estate. He said he "signed [the $34,000] over" to the lawyer. Husband testified that, from a Morgan Stanley account, he paid an additional $26,000 in legal fees, plus $6,300 to his psychiatrist, Dr. Murray. The funds in that account were accumulated during the marriage. Husband also said that he paid $10,000 for a bond. Husband claimed that he still owed Mr. McDonald $15,000. Questioned further as to whether he had any proof to corroborate his claim that the $34,000 paid to Mr. McDonald was inherited money, Husband replied that he did not have a receipt with him. Following trial, Husband appealed.

On our review in the first appeal, we noted that we were not able to determine how much of the court's award to Wife was from a division of the marital estate and what was considered alimony *in solido*. Therefore, we could not determine whether the trial court divided the parties' property and awarded alimony *in solido* pursuant to the appropriate statutory considerations and whether the overall property division was equitable. We remanded the case to the trial court with these instructions:

> Upon remand, the trial court is instructed to classify the parties' property; determine the value of the parties' marital and separate property; determine the amount of marital assets dissipated by [Husband]; divide the parties' marital property equitably in light of the statutory factors listed in Tennessee Code Annotated § 36-4-121(c); and award alimony, if any, separately from the division of property after consideration of the factors provided by Tennessee Code Annotated § 36-5-121(i). The trial court must then determine whether an award of alimony *in solido* to [Wife] to pay for her reasonable attorney's fees is warranted.

*Peterson*, at *4.

On remand, the court entered an amended decree in which it expressly classified the parties' property, valued the parties' property except for some personal items, and divided the marital assets. In doing so, the court took into account Husband's dissipation of marital assets. The court again awarded Wife alimony *in solido* of $10,000 to cover a portion of her attorney's fees. The divorce was awarded to Wife on the ground of inappropriate marital conduct.

Following entry of the amended decree, Wife moved the court to alter or amend its judgment or for a new trial on all issues based on her contention that the trial court incorrectly calculated the amount of dissipated marital assets thereby making the property division inequitable. She also claimed the alimony award was inadequate. The court denied the motion. Wife filed a timely notice of appeal.

II.

Wife raises the following issues for our review:

> 1. Whether the trial court erred in not granting [Wife's] Motion to Alter or Amend Judgment or for New Trial.

-3-

2. Whether the trial court erred in dividing marital assets and debts.

3. Whether the trial court erred in determining the amount of marital assets that [Husband] dissipated.

4. Whether the trial court erred in establishing an amount of alimony awarded to [Wife].

## III.

In this non-jury case, our review is de novo upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn.R.App.P. 13(d). We must honor this presumption unless we find that the evidence preponderates against those findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. *Campbell v. Florida Steel Corp*., 919 S.W.2d 26, 35 (Tenn. 1996).

## IV.

## A.

Taken together, Wife's first three issues address her contention that the overall property division is not equitable. The gist of her argument is that the trial court erroneously calculated the amount of marital assets that Husband dissipated and, as a consequence of this error, decreed a division of marital assets that is not equitable. Specifically, Wife asserts that Husband expended more than $90,000 in defending himself against the charges growing out of his assault on her. She contends that all of these expenditures involve funds taken from marital assets and, accordingly, the property division should be adjusted.

## B.

We begin by considering the issue of dissipation of marital assets. At trial, Husband admitted to withdrawing money from the parties' Morgan Stanley account – undisputedly a marital asset – to pay expenses incurred by him in his defense of the charges against him. Husband admitted that he paid attorney Gary McDonald $26,000 and his psychiatrist $6,300 out of the Morgan Stanley account. In addition to these expenditures, Husband testified he paid Mr. McDonald another $34,000 with funds he inherited from his mother. He also paid $10,000 for his bond. The source of this latter payment is not clearly identified in the record.

-4-

Husband also testified that he still owed Mr. McDonald $15,000. Wife groups these five figures together to arrive at a total dissipation of $91,300.

The trial court found that Husband dissipated $32,300, which was essentially the balance in the Morgan Stanley account when Husband used it to pay expenses in connection with the criminal case. Wife disputes this finding pointing out that the trial court's calculation does not take into account the $34,000; the amount still owed Mr. McDonald; and the $10,000 paid for his bond. The evidence does not preponderate against the court's dissipation funding. The inheritance money was separate property. The $15,000 still owed Mr. McDonald is a debt of Husband and has nothing to do with the marital estate. While the $10,000 for the bond was not considered by the court, this fact is outweighed by the fact that all of the funds in the Morgan Stanley account at the relevant time were essentially accounted for. In making its calculation, the court implicitly credited Husband's testimony. With respect to the issue of the credibility of witnesses, this Court has stated:

> When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999). In regard to the trial court's assessment of witness credibility, the Tennessee Supreme Court has further stated as follows:

>> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. Accordingly, appellate courts will not reevaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

> *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted).

*Freeman v. McCoy*, No. M2007-01798-COA-R3-CV, 2008 WL 4613595 at *2 (Tenn. Ct. App. M.S., filed Oct. 13, 2008). When the trial court's obvious finding that Husband is

credible is factored in, we cannot say that the evidence preponderates against the trial court's finding with respect to dissipation.

C.

The trial court divided the parties' marital estate as follows:

|  | Wife | Husband |
|---|---|---|
| Marital Residence | $120,000 | |
| Rhea County Property | | $12,000 |
| Automobile | 500 | |
| Truck | | 500 |
| Household Goods & Furnishings | NVTT[2] | |
| Wife's Retirement | 69,150 | 26,850 |
| Personal Effects & Clothing | NVTT | NVTT |
| Personal Prop. In Party's Possession | NVTT | NVTT |
| Earnhardt Collection | | NVTT |
| Penny Collection | | NVTT |
| Television | | NVTT |
| Total Valued Property | $189,650 (82.8%) | $39,350 (17.2%) |

With respect to the marital asset of Wife's Retirement, which was valued at $96,000, the trial court used an innovative and permissive approach. The court decreed that Wife was entitled to $42,300 – the grand total of the dissipation and alimony award – *off the top of Wife's Retirement*. This left $53,700, which the court divided equally. Hence, as shown above, Wife got $42,300 plus one-half of the $53,700 balance for a total of $69,150 while Husband got $26,850, *i.e.*, one-half of the $53,700 balance.

The Supreme Court has reiterated the trial court's discretion in effectuating an equitable division of the parties' marital property in a divorce proceeding:

> In a proceeding for divorce or legal separation, the trial court is
> authorized, prior to determining the support and maintenance of

---

[2]"NVTT" stands for "no value testified to."

one party by the other, to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate. *See Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The division of assets is not a mechanical process and trial courts are afforded considerable discretion. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

*Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007). In *Hodson v. Griffin*, 210 S.W.3d 568, 570-71 (Tenn. Ct. App. 2006), this Court further observed:

Under the abuse of discretion standard, the ruling of the trial court "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). A trial court does not abuse its discretion unless it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). Under the abuse of discretion standard, the appellate court is not allowed to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

The trial court expressly found that a "fair and equitable division of the marital property" was achieved based upon its consideration of the evidence in light of the statutory factors contained in Tenn. Code Ann. § 36-4-121(c).[3] By any calculation, Wife received the

---

[3]The statute provides as follows:

In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(continued...)

bulk of the limited marital assets. We think that the trial court implicitly considered and weighed various factors in Wife's favor to achieve a property division that, while not equal was equitable. In support of its decision, the court stated, "if there was some pocket of cash out there . . . she certainly deserves it. But given what we have and the assets we have to divide, I think what we have done is appropriate under the circumstances."

The trial court's approach is fair and reasonable. The evidence does not preponderate against the trial court's division of the marital estate for one very simple reason, *i.e.*, Husband's savage assault on Wife and the tragic and expensive aftermath, including Wife's psychological and physical injuries, warrant a disproportionate share to her. *See* Tenn. Code

---

[3](...continued)

> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
>
> (6) The value of the separate property of each party;
>
> (7) The estate of each party at the time of the marriage;
>
> (8) The economic circumstances of each party at the time the division of property is to become effective;
>
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
>
> (10) The amount of social security benefits available to each spouse; and
>
> (11) Such other factors as are necessary to consider the equities between the parties.

Ann. § 36-4-121(c)(5)(A)&(B). While we have taken into account Husband's assault on Wife, we do so – not as a matter of "fault" – but rather because of the impact of the assault on the marital estate. But having said all of this, we hold that Wife's receipt of 82.8% of the marital assets is not against the preponderance of the evidence. We reject Wife's argument that she is entitled to more.

V.

Lastly, Wife challenges the court's decree of $10,000 to her, which the court awarded to her toward payment of her attorney's fees. She submits that "[a]n award of alimony *in solido* was proper, but the amount awarded was inadequate." In support of her position, she asserts that a consideration of the relevant statutory factors, including need, ability to pay, fault, and dissipation of marital assets, all weigh in favor of increasing the amount of the alimony award.

In the first appeal of this case, this Court set forth the law governing awards of alimony *in solido*. We stated:

> Alimony *in solido* is a type of long-term spousal support. The total amount of an award of alimony *in solido* is established on the date of the divorce decree. It may be paid in a lump sum payment of cash or property, or in installment payments for a definite term. "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." Alimony *in solido* "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." It is not modifiable and does not terminate upon the remarriage or death of either party. When determining the amount of alimony to be awarded, if any, the trial court must consider the factors enumerated in Tennessee Code Annotated § 36-5-121(i). These factors include the separate assets of each party and the amount of marital property awarded to each party.

*Peterson*, at *3 (internal citations omitted). As we further observed, a trial court has "wide latitude" in awarding alimony, *see **Owens v. Owens***, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007), a determination that this Court "will not alter . . . absent a finding of an abuse of discretion." ***Burlew v. Burlew***, 40 S.W.3d 465, 472 (Tenn. 2001).

On remand, in reaffirming its award of alimony *in solido* to Wife, the court expressly held that

> alimony *in solido* should be awarded to [Wife] in the amount of $10,000.00 as heretofore specified after careful consideration of the factors contained in T.C.A. § 36-5-121(i). The dissolution of this marriage is due largely to the fault of [Husband] and his savage attack on his wife. [Wife] is in a precarious physical and mental condition and has a need for further professional care. In addition, her mental health may impair her ability to maintain employment. The alimony *in solido* is to be paid by allowing [Wife] to retain more than half the funds remaining in her retirement account after deducting the value of the assets dissipated by [Husband].

In moving the court to alter or amend its amended final decree with respect to the alimony award, Wife requested that the award of alimony *in solido* be increased from $10,000 to "maybe $40,000, $50,000." In denying the motion, the trial court expressly considered Wife's need, Husband's ability to pay, and Husband's fault in the demise of the marriage. An August 2011 affidavit from Wife's attorney reflected she would be responsible for $16,175.85 in attorney's fees through the trial of this case. Wife testified that she had charged some $14,000 in attorney's fees on her credit card. As a result, her monthly expenses had risen by $300 a month, making her already strained budget that much tighter. The award of $10,000 would alleviate some of that burden. On our review of the entire record, we conclude that the trial court did not abuse its discretion in awarding Wife $10,000 as a payment of a portion of Wife's reasonable attorney's fees. The trial court's remarks at the close of trial reflect that it believed that Wife deserved more. At the same time, the court recognized that it could not equitably give her more. The evidence does not preponderate against the trial court's award.

## VI.

The judgment of the trial court is affirmed. This case is remanded to the trial court, pursuant to applicable law, for the enforcement of the trial court's judgment and for the collection of costs assessed below. Costs on appeal are taxed to the appellant, Kathleen A. Peterson.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE