IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 9, 2016 Session

## RODGER LEE MOON v. CAROLYN O'DAY MOON

**Appeal from the Chancery Court for Anderson County**
**No. 14CH6192     M. Nichole Cantrell, Chancellor**

_____

### No. E2015-01470-COA-R3-CV-FILED-APRIL 21, 2016
_____


Husband and Wife were married for approximately three years when Husband filed a complaint seeking a divorce. Wife filed a counter-complaint seeking a divorce as well. The trial court awarded Wife a divorce, classified the parties' assets as separate or marital, and divided the marital estate. The trial court also awarded Wife transitional alimony for a period of two years. Husband appealed, arguing the trial court erred in (1) classifying a boat he purchased before the marriage as marital property; (2) dividing the marital estate in an inequitable manner; and (3) awarding Wife transitional alimony. On appeal, we affirm the trial court's judgment in all respects and grant Wife's request for the attorney's fees she incurred in defending Husband's appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

John D. Lockridge and Michael J. Bock, Knoxville, Tennessee, for the appellant, Rodger Lee Moon.

Jennifer L. Chadwell, Oak Ridge, Tennessee, for the appellee, Carolyn O'Day Moon.


## OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rodger Lee Moon ("Husband") and Carolyn O'Day Moon ("Wife") were married for approximately three years when Husband filed a complaint for divorce in March 2014 on the basis of irreconcilable differences. Wife filed an answer and counter-claimed for divorce, asserting Husband was liable for inappropriate marital conduct or, in the alternative, that the parties had irreconcilable differences. The case was tried over the course of two days in December 2014, and the court issued an order in March 2015 granting Wife a divorce on the grounds of inappropriate marital conduct.

Husband and Wife both testified at the trial. The evidence showed that Husband was a college graduate and worked as a mechanical engineer for Oak Ridge National Laboratory throughout the parties' marriage. At the time of trial, Husband was earning an hourly wage of $82. According to his tax returns, Husband earned between $158,000 and $181,000 per year from his employment as a mechanical engineer. Husband also owned rental properties that he had purchased before he married Wife, and he collected approximately $50,000 per year in rental fees.

Unlike Husband, Wife did not graduate from college. She was working at Home Depot, earning around $22,000 per year, when the parties were married in 2011. Within the first year of their marriage, the parties decided Wife should become a realtor, so she left her position with Home Depot in about March 2012 to begin working towards her real estate license. Wife earned her real estate license in July or August 2012. In 2013, Wife earned around $21,000 as a realtor, and as of the time of trial in mid-December 2014, Wife had earned around $15,000 for the 2014 year.

The parties each had certain assets they had acquired before the marriage. Wife had a retirement account and two vehicles. One of the vehicles was paid off and the other was still subject to a loan. After Husband and Wife were married, they purchased a house together. Wife testified that she used her "life savings" of $12,000 that she had from the sale of her previous home to pay the down payment on the parties' new home. Husband had two parcels of real estate, one of which he lived in and the other of which he rented.[1] Husband also had a retirement account, an antique Dodge Challenger, and a truck.

In addition to the assets listed above, Husband had a Master Craft boat that he purchased in 2010, before the parties were married. Husband testified that he paid $20,000 for the boat, $16,000 of which he borrowed from his brother at the rate of five percent interest. Husband testified that he paid his brother back in 2012 or 2013 using a

---

[1]After the parties were married and moved to another home, Husband rented out his prior residence.

credit card with a zero percent interest rate that he then paid off by acquiring another credit card. Husband explained that at the time of trial he owed approximately $30,000 on his credit cards. He testified that he refinanced this debt each year by acquiring another credit card to pay off the current debt(s). During the parties' marriage, Husband replaced the boat's interior and purchased a bimini to provide shade on the boat. Wife testified that Husband had engine parts for the boat delivered to their house while they were married and that Husband made repairs to the boat's engine. Husband testified that the value of the boat was $20,000, and Wife testified that the boat had a value of $30,000.

The trial court assigned a value of $20,000 to the boat and determined that it qualified as marital property rather than Husband's separate property, as Husband requested. The court explained:

> The testimony showed that this was acquired by the husband immediately prior to the marriage, in 20[10], by taking a loan from his brother; however, the loan was repaid after the parties were married by taking out a cash advance on the parties' credit card. So effectively, the loan was repaid after the parties were married.
>
> The court deems that there has also been a commingling or transmutation of this property by paying the loan with marital income or creating marital debt on these credit cards that caused this to be marital property. The Court also finds that there has been a substantial increase in the value of this asset by expenditure of marital income to replace the interior of the boat and to purchase the Bimini for the boat; therefore, this asset valued at $20,000 is deemed to be marital property.

With regard to the other marital property, the trial court divided the assets and debt in a way it determined was equitable. The court awarded Wife transitional alimony of $1000 per month for two years. The court also awarded Wife her attorney's fees as alimony in solido.

Husband filed a motion to alter or amend, which the trial court denied. In affirming its earlier rulings, the trial court wrote in its Amended Order:

> The Court hereby affirms its division of assets and debts finding that they represent an equitable division considering the following factors: duration of the marriage; the vocational skills of the parties; employability; earning capacity; financial needs; financial liabilities; the relative ability of each party for future acquisitions of capital assets and income; the separate property of each party; and the economic circumstances of each party at the time . . . the division of property becomes effective. In this case we have a

Husband with a college degree, a Wife who does not; considerable separate assets of the Husband, a Husband with a significantly higher income and a greater earning capacity, and the future ability to earn capital assets and income in relation to the Wife.

The Plaintiff argues specifically that the division of the credit card debt was inequitable. However, the Court notes that at trial the Plaintiff failed to testify regarding this credit card debt other than to say it was his normal practice to roll credit card debt from one credit card to another. The Court determined at trial that the Husband would be responsible based on the Husband's own testimony that he was unable to determine which portion of the debt was pre-marital or marital. The Husband offered no testimony to indicate that any portion of this debt was incurred during the marriage. The Husband failed to offer any testimony regarding what portion of this debt existed prior to the marriage. Testimony was given by both parties that the Husband had sole control and use of the credit cards in question, . . . and that the Wife was not allowed access to these credit cards. The Court hereby affirms its decision to hold the Husband responsible for the debt on these . . . credit cards.

Husband appealed, arguing the trial court erred (1) by classifying the boat he purchased prior to the marriage as marital property; (2) by distributing the marital estate between the parties in an inequitable manner; and (3) by awarding Wife transitional alimony.

## II. ANALYSIS

### A.  The Boat

We review the trial court's findings of facts de novo, according them a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). The trial court's decision regarding the classification of the parties' assets as marital or separate property is "inherently factual." *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007); *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *3 (Tenn. Ct. App. Sept. 1, 2006).

"Marital property" is defined, in pertinent part, as:

all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date

of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing . . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A). Separate property includes, *inter alia*, "[a]ll real and personal property owned by a spouse before marriage . . . ." Tenn. Code Ann. § 36-4-121(b)(2)(A). Property that began as separate property when the parties were married can be converted into marital property if it is "inextricably mingled" with marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (quoting 2 Homer H. Clark, THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.2 at 185 (2d ed.1987)).

The trial court classified the Master Craft boat that Husband acquired before the parties were married as marital property because Husband used marital funds after the parties were married to repay the loan Husband obtained from his brother to buy the boat. The trial court also found that the value of the boat increased during the parties' marriage when marital funds were used to replace the boat's interior and purchase a bimini.

If Husband had purchased the boat free and clear with his own money before he married Wife rather than borrowing money that he paid back using marital funds, Husband would have a stronger argument that the boat should be classified as his separate property. However, because of the way Husband repaid the loan, transferring debt from one credit card to another and obtaining credit from different sources during the parties' marriage, it is impossible to determine the source of the money Husband used to pay his brother back for the loan to buy the boat. Husband testified as follows:

> Q: Mr. Moon, you testified, on the boat, that when you paid your brother back on the loan from the boat that you actually had to take a transfer from the credit card, is that correct?
>
> A: That is correct.
>
> Q: You got a cash advance through a transfer?
>
> A: Sure.
>
> Q: And then you testified that you actually had it transferred to another card?
>
> A: Right about every year, we would have to do another year.
>
> Q: And when you were questioned about whether or not that amount had been paid off, I believe your answer was no?

A:    Okay.

Q:    Has that amount for the boat been paid off, has that credit card been paid off? Is this the transfer that hasn't been paid off?

A:    You would have to add that – the renovations on the Oak Ridge home that we currently live in cost $85,000. And there was a bunch of money that was spent – we owe $31,000 right now on a home equity loan plus the $31,000 or $32,000 on credit cards now. That is significantly lower than the cost of those - - on those other renovations.

And the other thing is the renovations on the Northshore home, those were done, purchased with a - - I took out a home equity line of credit that shows on my statement there as a balance today of about $45,000 on that. That home is rented out, and so that is separate from the - - And I apologize. It is kind of confusing. It is complicated is a better word.

Q:    Would this loan have been paid back after you were married to Ms. Moon?

A:    A portion of it, yes.

Q:    Okay. And a portion of that - -

A:    I mean, I don't - - you can apportion it out however you want. I don't know how to - -

Q:    Well, how much did you actually transfer to pay to your brother?

A:    I'm - -

Q:    You said you borrowed $16,000 from him?

A:    Yes.

Q:    So, would that have been the amount of the cash advance or whatever you want to call it that you paid him back?

A:    He gave me $16,000 and each year I paid the interest plus an additional $3,000 or $4,000.

- 6 -

Q: Okay. Which credit card did you take the cash advance from to pay your brother back?

A: I don't know. One of the three, I guess.

Q: Okay. And you would have made payments on that credit card during the time you were married to Ms. Moon?

A: Correct.

Based on Husband's testimony that he used marital funds to make payments on his credit cards; that he used his credit cards to get cash advances from which he repaid his brother for the loan to buy the boat; and that marital funds were used to improve the boat, we hold the evidence does not preponderate against the trial court's findings that the Master Craft boat was marital property.

B. Division of Marital Estate

Once a trial court classifies divorcing parties' property as marital or separate, the court is to assign the property a value and divide it between the parties in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1). Courts have consistently found that "Section 36-4-121(a)(1) requires an *equitable* division of marital property, not an *equal* division." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010)). "A division of marital property is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property." *Owens*, 241 S.W.3d at 490 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Morton v. Morton*, 182 S.W.3d 821, 833-34 (Tenn. Ct. App. 2005); and *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001)). Dividing the marital estate includes dividing both the marital assets and the marital debts. *Owens*, 241 S.W.3d at 490.

Trial courts enjoy broad discretion in equitably dividing the marital estate, and appellate courts "accord great weight" to a trial court's determination of how the estate should be divided. *Id.* Appellate courts "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Larsen-Ball*, 301 S.W.3d at 234 (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (itself quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996))). As a result, "it is not our role to tweak the manner in which a trial court has divided the marital property." *Owens*, 241 S.W.3d at 490 (citing *Morton*, 182 S.W.3d at 834).

Courts are directed to consider the following statutory factors when making an equitable division of marital property:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

The trial court considered these factors in dividing the marital assets, stating:

> In this case, we do have a short marriage, approximately three and a half years. The parties are of similar age. . . . Both are physically and mentally able to continue to work. The husband has a college degree; the wife does not. The employability: both are currently employed, and nothing in the Court record reflects that that should not continue to be the case.
>
> What we do have is a substantial difference between their earning capacities, the size of their separate assets, and their financial needs. Husband's income in 2014 from his W-2 through his place of employment was $158,313. And that is expected to decrease some in 2015 due to the new employment contract. However, in the same year, wife only made $15,000. The year before, she made $22,000, giving her a two-year average under her new employment as a realtor of $18,000 a year.
>
> . . . .
>
> Both parties have other sources of income. Although the plaintiff failed to report on his other income on his income and expense report, the testimony showed that he has an additional $2,150 per month in rental income associated with the Northshore property and an additional $24,000 to $26,000 a year in rental income from the Driftwood Circle property, bringing his yearly income up to between $208,000 and $210,000 a year. Wife has additional income from spousal support from a previous marriage in the amount of $500, which will terminate in July of 2015, and child support from a previous marriage of $1,280 a month.
>
> Therefore, the Court feels that the husband clearly has more earning capacity than the wife; that his position currently is more financially stable than the wife's, although the wife's future earnings may increase over time. Husband's separate assets are more substantial than the wife's with the two separate real estate properties . . . . Husband's estate . . . was also more substantial than the wife's, at the time of marriage. All of those factors need to be taken into consideration as we divide the marital property.

The trial court divided the marital assets as follows. Each party was awarded one-half of the equity in the marital house; Wife was awarded two vehicles; and Husband was awarded one vehicle and the boat, with the understanding that Husband was to pay Wife for her one-half share of the boat. The court found the two rental properties were Husband's separate property; however, citing Tenn. Code Ann. § 36-4-121(b)(1)(b), it

determined that Wife was entitled to one-half of the increase in value of the Northshore property she helped to renovate and improve.

Turning to the marital debt, the trial court allocated to Wife one-half of the mortgage debt associated with the marital home, the debt associated with one of her vehicles,[2] and the debt associated with the credit cards that she used and that were in her name. The court allocated to Husband the debt associated with the two rental properties determined to be Husband's separate properties, one-half of the mortgage debt associated with the marital home, the debt on the vehicle awarded to him, and the debt associated with the credit cards Husband used, to which Wife was not given access.

The credit card debt allocated to Wife totaled about $6,238, and the credit card debt allocated to Husband totaled about $37,498. The trial court explained why a larger portion of the parties' credit card debt was allocated to Husband:

> The Choice credit card and the Citibank credit card that the plaintiff testified . . . was his practice to continually roll debt over from one credit card to the other, . . . these credit cards were in his possession and in his sole control. His wife was not trusted - - was not given a card on which she could charge anything. The Court is unable to separate what portion of that debt may have been rolled over from previous debt owed by the plaintiff/husband prior to the divorce [sic], and therefore charges him with the balance on both accounts, the Choice and Citibank cards.

Husband does not argue with the trial court's award of specific marital assets to one or the other party (other than its determination that Wife is entitled to one-half of the Master Craft boat). Rather, Husband contends that the court's division was inequitable overall. However, over $600,000 of the debt assigned to Husband was due to mortgages associated with Husband's two rental properties, both of which are Husband's separate properties. As the court noted, Husband earns approximately $50,000 per year in rental income from these properties; this income is not reflected in Husband's calculations. The evidence showed Wife's spousal support from a prior marriage was to cease in July 2015.

The division of marital assets and debts is a fact-intensive endeavor that will vary from case to case. Our Supreme Court has encouraged trial courts to "use the division of marital property to assist in meeting the disadvantaged spouse's financial needs when feasible." *Robertson*, 76 S.W.3d at 341; *see also Crabtree v. Crabtree*, 16 S.W.3d 356, 361 n.4 (Tenn. 2000) (noting that in cases with a disparity in parties' earning capacities, trial court may adjust award of marital assets to assist disadvantaged spouse). The trial court here reviewed and applied the statutory factors set forth in Tenn. Code Ann. § 36-4-

---

[2]Only one of the vehicles awarded to Wife had money owing on it.

121(c) to the financial situations of Husband and Wife and explained its decision in a well-reasoned manner. Husband has failed to show the trial court's distribution of the marital estate lacks proper evidentiary support, results in some error of law, or constitutes a misapplication of statutory requirements and procedures. *Larsen-Ball*, 301 S.W.3d at 234. As a result, we affirm the trial court's distribution of the marital estate.

C. <u>Transitional Alimony</u>

Husband did not appeal the trial court's award of transitional alimony to Wife as a separate issue, but he argued that Wife was not entitled to spousal support in addition to the portion of the marital estate the trial court awarded her. We disagree and uphold the trial court's award of transitional alimony in the amount of $1,000 per month for a period of two years.

Transitional alimony is appropriate when a court determines that the economically disadvantaged spouse does not require rehabilitation but that he or she needs some financial assistance "to adjust to the economic consequences of a divorce." Tenn. Code Ann. § 36-5-121(d)(4); *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 114 (Tenn. 2011). Trial courts have broad discretion to determine whether, and in what amount, spousal support should be awarded, and appellate courts are "'disinclined to second-guess a trial court's spousal support decision.'" *Gonsewski*, 350 S.W.3d at 105 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998)). Rather, "'[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable.'" *Id.* (quoting *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). The factors courts are required to consider in determining whether to award spousal support are set forth in Tenn. Code Ann. § 36-5-121(i). As with all types of spousal support, the two most important considerations for a trial court to take into account are the obligor's ability to pay and the obligee's need for the support. *Id.* at 110 (citing *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)).

The trial court took into account the relevant statutory factors and explained the reason for its award of transitional alimony in its Amended Order, issued in response to Husband's motion to alter or amend:

> The parties agreed during their marriage that the Wife would leave her previous place of employment, Home Depot, and change careers. She completed the necessary education and training during their marriage and has placed herself in a position to have a greater earning capacity as she becomes more experienced in her new field. Therefore, rehabilitative support is not necessary. However, the situation at hand is that the Wife is still economically disadvantaged in relation to Husband. Her two year

average income in her new profession as a realtor is only reaching $18,000. The Husband [has] a yearly income between $208,000 and $210,000, indicating that the Husband has the ability to pay some type of spousal support. Taking into account the following factors to be considered under T.C.A. § 36-[5]-121(i) [including] the discrepancy of the earning capacity between the parties; the financial needs of the Wife; the financial resources of each party; the discrepancy of the education of the parties; the separate assets of each party and the standard of living of the parties established during their marriage, this Court holds that the award of alimony was proper in this case.

The Court affirms its decision to award transitional spousal support at $1,000 Dollars per month for a period of two years thus aiding the Wife in adjusting to the economic consequences of a divorce and supplement her income for this period of time during which her own earning capacity will increase.

Husband has failed to show that the trial court abused its discretion in awarding Wife transitional alimony for a period of two years. We conclude the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. Accordingly, we affirm the trial court's award.

D.    Wife's Attorney's Fees

Wife seeks an award of her attorney's fees incurred in defending Husband's appeal. Appellate courts have discretionary authority to award a spouse "reasonable attorney fees incurred in enforcing any decree for alimony" regardless of whether the fees are incurred at the original divorce hearing or at any subsequent hearing. Tenn. Code Ann. § 36-5-103(c). We hereby exercise our discretion to award Wife the reasonable attorney's fees she incurred in defending Husband's appeal. The case is remanded to the trial court to determine the amount of Wife's reasonable attorney's fees incurred on appeal and to enter an order directing Husband to pay that amount to Wife.

III. CONCLUSION

The trial court's judgment is affirmed in all respects. The case is remanded to the trial court to determine the amount of Wife's reasonable attorney's fees incurred on appeal and to

enter an order awarding this amount to Wife. Costs of this appeal shall be assessed against the appellant, Rodger Lee Moon, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE